*In re* DENISE BONTRAGER (The People of the State of Illinois, Petitioner-Appellee, v. Denise Bontrager, Respondent-Appellant).

Third District    No. 3—96—0487

Opinion filed February 4, 1997.

Cynthia Z. Tracy (argued), of Guardianship & Advocacy Commission, of Peoria, and Jeff M. Plesko, of Guardianship & Advocacy Commission, of Anna, for appellant.

Kevin W. Lyons, State's Attorney, of Peoria (John X. Breslin and Robert M. Hansen (argued), both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HOLDRIDGE delivered the opinion of the court:

Respondent, Denise Bontrager, appeals from orders of the circuit court of Peoria County, which found her subject to involuntary admission into Zeller Mental Health Center (Zeller) for 60 days and subject to involuntary administration of psychotropic drugs for a period not to exceed 90 days. For the following reasons, we reverse.

## FACTS

The limited record in this case reveals that respondent obtained a college degree and, at one point, was employed and living with her husband in Ohio. Since approximately 1991, respondent has been employed, on and off, has moved often, and her marital status is uncertain.

Respondent spent the last week of April 1996 living with her sister in Spring Valley, Illinois. That living arrangement ended sometime after a spanking incident involving respondent's nine-year-old niece, for which the police were called.

On May 2, 1996, a petition for respondent's involuntary admission was filed pursuant to section 1—119 of the Mental Health and Developmental Disabilities Code (the Code). 405 ILCS 5/1—119 (West 1992). The petition asserted respondent was mentally ill and unable to provide for her basic physical needs so as to guard herself from serious harm. This assertion was based on respondent's reports of hearing voices, referring to herself in the third person, failing to eat for three months because she believed unnamed persons had removed her internal organs and blood, fearing herself because she told the truth, and spitting frequently because she would not swallow her saliva.

A certificate by licensed clinical social worker and qualified examiner David Schwarz (Schwarz) accompanied the petition. Schwarz certified that respondent's irrational fears and loss of touch with reality proved she could not be depended on to care for herself.

On May 3, 1996, respondent was hospitalized at Zeller on an emergency basis with petition and certificate. Also that day, a petition for administration of psychotropic drugs was filed pursuant to section 2—107.1(d) of the Code. 405 ILCS 5/2—107.1(d) (West 1992). A certificate by respondent's treating psychiatrist at Zeller, Dr. Jayalakshmi Attaluri, accompanied the petition and certified, *inter alia*, that respondent was mentally ill, evidenced by her deteriorating behavior, repeated episodic occurrences, and preoccupation with her problems.

At a May 8, 1996, hearing on both petitions, Dr. Attaluri testified to the allegations set forth in the petition and the certificate, and opined that respondent's condition had existed prior to her admission to Zeller. She recommended that respondent be committed to Zeller for 60 days and that a neuroleptic psychotropic drug, such as Prolixin or Haldol, be administered. Dr. Attaluri believed that respondent lacked the capacity to reasonably decide to take medication and that the use of such psychotropic drugs would benefit respondent, with any possible harm or side effects being outweighed by the benefits.

Respondent testified and denied any psychiatric problems. She only demanded medical treatment for her missing organs and requested legal assistance. She asked to be released to the Guardianship and Advocacy Commission, and also asked to be discharged, stating that she could return home, which could be Peoria, but which had been Spring Valley. She also voiced an interest in contacting Catholic Social Services and living in one of their facilities.

Respondent stated that, until approximately 10 days prior to the hearing, she had lived independently and paid her expenses. She maintained that she was last employed in late 1994 or early 1995; however, she stated that she had received unemployment compensation on and off since 1991. She denied that she would harm herself or anyone, and if allowed to be released, she could care for herself, needing only transportation.

The court found clear and convincing evidence of respondent's mental illness, her refusal of medication, and her deteriorating condition. The court determined respondent lacked the capacity to make a reasoned decision about medication and that the benefits of psychotropic drugs would outweigh any harm, which could be guarded against. Finding other less restrictive services inappropriate, the court ordered respondent involuntarily committed for 60 days and authorized the administration of psychotropic drugs not to exceed 90 days. Respondent appeals the court's orders.

## I. INVOLUNTARY COMMITMENT

■ Pursuant to section 1—119 of the Code, respondent is subject to involuntary admission if, due to a mental illness, she is reasonably expected to inflict serious physical harm upon herself or another in the near future, or is unable to care for her basic needs so as to guard herself from serious harm. 405 ILCS 5/1—119 (West 1992).

The elements of section 1—119 must be proved by clear and convincing evidence, which requires a high level of certainty before finding one in need of mental treatment and curtailing one's liberty, but it is something less than proof beyond a reasonable doubt. *In re Stephenson*, 67 Ill. 2d 544 (1977); *In re Johnston*, 118 Ill. App. 3d 214 (1983); *Bazydlo v. Volant*, 164 Ill. 2d 207 (1995).

As a reviewing court, we give great deference to a circuit court's factual findings, as it stands in the best position to weigh witness credibility, and its decision will not be disturbed unless it is manifestly erroneous. *In re Jeffers*, 239 Ill. App. 3d 29, 35 (1992). However, we emphasize that in order to uphold a court's order, appropriate findings, based on nothing less than clear and convincing evidence, must be made.

■ After careful review of the record, we find that the court's decision to involuntarily commit respondent was manifestly erroneous. First, we find that the People failed to prove by clear and convincing evidence that respondent was unable to care for her basic physical needs. Dr. Attaluri testified that she could "not really say whether she [respondent] can prepare her own meals or whether she was doing it or not." Dr. Attaluri acknowledged that she had limited information about respondent, noting that she "did not have a chance to talk to anybody [family or friends, concerning respondent]." She further acknowledged her inability to determine if respondent attached any importance to providing for her own needs.

Under these circumstances, we find that Dr. Attaluri's comments did not constitute clear and convincing evidence that established a high level of certainty that respondent was unable to care for her basic physical needs. We note that respondent had a plan if discharged, with three possible living arrangements and persons to contact. In addition, she showed some understanding of money, considering she claimed that she had lived independently and received unemployment compensation.

Next, we find that the People failed to prove by clear and convincing evidence that respondent would seriously harm herself. The record makes no mention of respondent being loud, threatening, or disruptive. Although one spanking incident involving respondent's niece was mentioned, the record is devoid of information concerning the severity of this incident, and there was no other evidence of past or projected serious harm to herself or to anyone else presented.

In fact, when asked on direct examination whether respondent may harm someone else or herself, Dr. Attaluri stated that "there is a potential"; however, on re-cross-examination she stated that respondent may harm "somebody else, not herself. She's not suicidal, no." Although the court does not have to wait until respondent harms herself to commit her (*In re Manis*, 213 Ill. App. 3d 1075 (1991)), Dr. Attaluri's opinion of a "potential" for harm, followed by a statement that respondent would not harm herself, falls short of being clear and convincing evidence and is speculative at best.

Lastly, although respondent maintains that she was never notified of the People's attempt to involuntarily commit her based on "dangerous propensities," the record indicates respondent was personally served with notice on May 7, 1996.

## II. INVOLUNTARY ADMINISTRATION OF PSYCHOTROPIC DRUGS

■ Section 2—107.1(d) of the Code requires that the following fac-

tors be proved by clear and convincing evidence before psychotropic drugs can be administered to a recipient:

"(1) That the recipient has a serious mental illness or developmental disability.

(2) That because of said mental illness *** recipient exhibits deterioration of his ability to function, suffering, or threatening or disruptive behavior.

(3) That the illness *** has existed for a period marked by the continuing presence of the symptoms *** or the repeated episodic occurrences of these symptoms.

(4) That the benefits of the psychotropic medication will outweigh the harm.

(5) That the recipient lacks the capacity to make a reasoned decision about the medication.

(6) That other less restrictive services have been explored and found inappropriate." 405 ILCS 5/2—107.1(d) (West 1992).

Although Dr. Attaluri considered respondent seriously mentally ill, she acknowledged that she was unable to diagnose her condition due to a lack of information.

Dr. Attaluri certified that respondent had become agitated and physically aggressive; however, she failed to specify how. Dr. Attaluri believed that respondent's mental illness affected her relationships and her ability to function, in part, because she went from being a college-educated, employed, married woman, to one who is unemployed, moves from place to place, and will not comment on her marital status. We do not consider these characteristics to constitute a clear and convincing showing of respondent's deteriorating ability to function. Further, when asked, Dr. Attaluri admitted that she had "no idea if she [respondent] can manage herself in this women's shelter."

Dr. Attaluri stated that respondent's illness has existed for a period marked by the continuing presence of her symptoms, *i.e.*, respondent is psychotic, delusional, and paranoid that people are stealing things from her. However, Dr. Attaluri acknowledged that respondent "doesn't say directly that she's hearing voices, all she says is all I can say is I have an ear problem."

■ Although Dr. Attaluri indicated that the benefits of psychotropic drugs would outweigh any harm, she failed to state why the drugs were necessary, what the benefits were, or what potential side affects existed.

Dr. Attaluri opined that respondent was incapable of making a reasoned decision concerning medication due to her delusions and denial of psychiatric problems. However, it is uncertain from the record whether she discussed or reviewed written explanations of

benefits/side effects with respondent, as required by section 2—102 of the Code (405 ILCS 5/2—102 (West 1992)), and, if so, whether respondent failed to understand her options. Further, no one stated why respondent consistently refused the drugs. *In re Carmody*, 274 Ill. App. 3d 46, 52-53 (1995) (a mentally ill person subject to involuntary commitment retains a constitutional right to refuse psychotropic drugs).

Lastly, there was no evidence submitted as to what least restrictive services were explored and found inappropriate.

Under these circumstances, the People failed to prove the elements of section 2—107.1(d) by clear and convincing evidence. Therefore, we find that the court erred by ordering respondent subject to the administration of psychotropic drugs.

Based upon the foregoing, the orders of the circuit court of Peoria County subjecting respondent to involuntary commitment for 60 days, and involuntary administration of psychotropic drugs not to exceed 90 days, are reversed.

Reversed.

McCUSKEY and SLATER, JJ., concur.