No. 2--00--0899

________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

________________________________________________________________

In re
 CATHY M., Alleged to be ) Appeal from the Circuit Court

a Person in Need of ) of Kane County.

Psychotropic Medication )

) No. 00--MH--141

)

(The People of the State of )

Illinois, Petitioner-Appellee, ) Honorable

v. Cathy M., Respondent- ) Roger W. Eichmeier,

Appellant). ) Judge, Presiding.

________________________________________________________________

JUSTICE McLAREN delivered the opinion of the court:

Respondent, Cathy M., appeals the order of the circuit court of Kane County, which granted the State's petition to involuntarily administer psychotropic medications to respondent.  On appeal, respondent claims that the trial court's order must be reversed because (1) respondent was denied her right to be represented by counsel of her choice and (2) the State failed to inform respondent about the medications' risks and benefits and prove by clear and convincing evidence that respondent lacked the capacity to make a reasoned decision about taking the medications.  We reverse.

On April 10, 2000, the State filed a petition seeking to involuntarily administer psychotropic medications to respondent.  The hearing on this petition was continued five times.  On one of those occasions, the hearing was continued because the Kane County Diagnostic Center was scheduled to evaluate respondent on the same day that the hearing was to take place.  The hearing was continued twice on respondent's motion for a continuance and once by agreement.  One of respondent's requests for a continuance was made because respondent wanted to have her assigned assistant public defender (APD), Mr. Casey, represent her.

On July 7, 2000, before the hearing began, APD Brian Jacobs, the second assistant public defender assigned to respondent's case, informed the trial court that respondent wanted APD Casey, the first assistant public defender assigned to respondent's case, to represent respondent during the hearing.  APD Casey was unable to represent respondent during the hearing because he recently left the public defender's office.  When respondent addressed the court, she informed the court that she would like either APD Casey or her own attorney to represent her.  The trial court asked respondent if she had retained a private attorney, and respondent told the court that her attorney's name was Mr. Zeto.  The court said that "[t]here has never been a Mr. Veto [
sic
] listed on this file.  Let's proceed."

Dr. Syed Anwar testified that he was the psychiatrist assigned to respondent at the Elgin Mental Health Center (EMHC).  At the time of the hearing, Dr. Anwar had been respondent's doctor for only two weeks, having taken over treating respondent when Dr. Elizabeth Tomar resigned her position at the EMHC.  Dr. Tomar filed the petition to administer psychotropic medications.  Before Dr. Tomar resigned, she spoke with Dr. Anwar for 15 or 30 minutes, and they discussed respondent's case.  Dr. Anwar testified that he agreed with Dr. Tomar's assessment of and proposed treatment for respondent as delineated in the petition.

Dr. Anwar stated that he diagnosed respondent as suffering from a bipolar disorder consisting of a manic illness and psychosis.  Patients suffering from this disorder frequently experience delusions.  Respondent's delusions included her belief that she had a miscarriage, that she was kidnapped, and that her heart was on the right side of her body.  Dr. Anwar formulated his diagnosis for respondent's illness after interviewing respondent, talking with the staff at the EMHC, and reviewing respondent's medical records.  Dr. Anwar stated that his interviews with respondent consisted of two interviews that lasted a maximum of five minutes each.  The interviews only lasted five minutes because respondent would walk away from Dr. Anwar within five minutes after the conversation started.  Dr. Anwar testified that in addition to the interviews he also observed respondent two to four times.

During the two interviews, Dr. Anwar attempted to discuss the psychotropic medications that he believed respondent should take, but the doctor would not mention the name of the medicines when he spoke with respondent.  Rather, Dr. Anwar would refer to the medicines as antipsychotic and mood stabilizer medicines.  The only information Dr. Anwar conveyed to respondent about the medicines was that they would make respondent better and she would be discharged from the EMHC if she took the medications.  When Dr. Anwar was asked whether he and respondent discussed the medications' side effects, Dr. Anwar stated that "[respondent] wouldn't let [him] come to that point because she doesn't feel she needs the medications at all."

We note that during Dr. Anwar's testimony respondent would interject and claim that Dr. Anwar did not know respondent well enough to diagnose her.  When respondent would interrupt Dr. Anwar, respondent also would berate the doctor.

When respondent was called as a witness, she was asked her name, and, in response, she stated that her birth name was Heather Pinner.  Respondent claimed that she was kidnapped when she was five years old, and her name was changed to Cathy M. after she was kidnapped.  Respondent stated that she did suffer a miscarriage right before she was taken to the EMHC.  When respondent was questioned about her interviews with Dr. Anwar, respondent testified that she met with Dr. Anwar twice.  Each of these interviews lasted two seconds.  Respondent stated that she also saw Dr. Anwar in her unit at the EMHC approximately three times.  In response to questions about the psychotropic medications that Dr. Anwar wished to give respondent, respondent testified that she did not understand the medications' benefits and harms, that no one spoke with her about the medications' risks and benefits, and that she was not given anything in writing detailing the medications' benefits and side effects.

The court found respondent subject to the involuntary administration of medication for a period of time not to exceed 90 days.  In addressing the various factors the court relied on when it made this determination, the court noted, among other things, that respondent lacked the ability to make a reasoned decision about the medications.  This timely appeal followed.

Before addressing the merits of this appeal, we note that the issues raised are moot.  Nevertheless, we will address the questions raised in the appeal because the issues are " 'capable of repetition, yet evading review.' "  
In re Barbara H.
, 183 Ill. 2d 482, 491 (1998), quoting 
In re A Minor
, 127 Ill. 2d 247, 258 (1989). 

The first issue we address is whether the trial court's order must be reversed because respondent was denied the right to be represented by an attorney of her choice.  Section 3--805 of the Mental Health and Developmental Disabilities Code (Code) (405 ILCS 5/3--805 (West 2000)) provides that in a hearing to involuntarily admit a respondent to a mental health facility the respondent must be represented by counsel.  This right to counsel also applies in hearings involving the involuntary administration of psychotropic medication.  
Barbara H.
, 183 Ill. 2d at 494.

In the criminal context, it is an abuse of discretion to deny a defendant's request for a continuance and proceed with the trial where a private attorney has been retained or an attorney's appearance is on file.  
People v. Jackson
, 216 Ill. App. 3d 1, 7 (1991).  A trial court does not abuse its discretion, however, when a defendant's request for a continuance to retain a private attorney is based merely on the defendant's desire to obtain counsel.  
Jackson
, 216 Ill. App. 3d at 7.  Nevertheless, if counsel is identified or stands ready, willing, and able to enter an appearance on behalf of the defendant, the trial court should grant the defendant's request for a continuance.  
Jackson
, 216 Ill. App. 3d at 7.  The trial court may deny a defendant's trial-day request for a continuance if the defendant currently is represented by a competent court-appointed criminal attorney and fails to articulate an acceptable reason for requesting a continuance in order to retain another attorney.  
Jackson
, 216 Ill. App. 3d at 7.  We determine that these principles apply with equal force in mental health proceedings.

In addressing respondent's claim that she was denied the right to be represented by an attorney of her choice, we determine that 
Barbara H.
 is instructive.  In 
Barbara H.
, the respondent did not appear at the hearing on the petition to involuntarily admit and administer psychotropic medication, and the respondent's attorney waived the respondent's presence at the hearing.  
Barbara H.
, 183 Ill. 2d at 487.  Before the attorney waived the respondent's presence, the attorney indicated to the court that the respondent  claimed she had representation through the Catholic Charities Association or a similar group.  
Barbara H.
, 183 Ill. 2d at 494.  The trial court failed to take evidence regarding the respondent's capacity to arrange for counsel, allowed the hearing to go forward without respondent, and granted both petitions.  
Barbara H.
, 183 Ill. 2d at 485-87, 496.  Our supreme court reversed the trial court and noted that when the trial court was presented with information that the respondent had retained alternative representation, the court should not have ignored the respondent.  
Barbara H.
, 183 Ill. 2d at 495.  Rather, the trial court should have delayed the hearing, taken evidence, and heard arguments to determine whether the respondent had the capacity to decide who should represent her.  
Barbara H.
, 183 Ill. 2d at 496.

Here, respondent identified Mr. Zeto as the private attorney that she had retained to represent her in the proceedings.  As in 
Barbara H.
, the trial court here summarily dismissed respondent's request to be represented by Mr. Zeto without first conducting an evidentiary hearing to determine whether respondent had in fact retained this attorney and had the capacity to decide whether Mr. Zeto should represent her.

We also note that respondent articulated an acceptable reason for requesting a continuance to retain a private attorney.  The record revealed that prior to the hearing respondent was represented by APD Casey.  Respondent was pleased with APD Casey's representation of her and wished to have either APD Casey or Mr. Zeto represent her during the proceedings.  APD Casey was unable to represent respondent during the hearing because he had left the public defender's office.  Given the fact that respondent's first court-appointed attorney was unavailable to represent respondent, we determine that it was not unreasonable for respondent to ask for a continuance to retain Mr. Zeto.

In reaching this conclusion we note that, although a defendant does not have the right to choose his court-appointed attorney or insist that a particular assistant public defender represent him at trial (
People v. Wanke
, 303 Ill. App. 3d 772, 782 (1999)), the cases addressing this rule involve situations where the defendant is unsatisfied with his current attorney because of, among other things, a disagreement over trial strategies or a deteriorated attorney-client relationship.  Here, the trial court failed to inquire why respondent wished to have APD Casey or someone other than APD Jacobs represent her.  If the trial court had conducted the type of evidentiary hearing required under 
Barbara H.
, then the basis for respondent's request might have been revealed and possibly deemed proper.

The State claims that respondent's request for a continuance was merely an attempt to thwart the administration of justice.  See 
People v. Lewis
, 165 Ill. App. 3d 97, 102 (1988).  We disagree.  Nothing in the record suggests that respondent requested any of the continuances in order to delay the proceedings.  Rather, respondent requested only three continuances in this case.  She requested one of the continuances because she was attempting to resolve the matter without having a hearing, and she asked for another continuance because APD Casey was not present in the courtroom.  Respondent asked for the third continuance because she was undergoing a court-ordered evaluation, and she was, therefore, unable to be present in court.  Moreover, the record indicates that respondent only once asked for a continuance in order to retain an attorney, and, as noted above, this request was not unreasonable given the facts presented in this cause.  Thus, in contrast to 
Lewis
, respondent was not requesting continuances repeatedly in order to postpone the hearing.

The second issue we must address is whether the trial court's order must be reversed because the State failed to present clear and convincing evidence that respondent was informed about the medications' side effects and lacked the capacity to make a reasoned decision regarding her treatment.  The State must present clear and convincing evidence that a respondent lacked the capacity to make a reasoned decision about taking the prescribed psychotropic medication.  
In re Edward S.
, 298 Ill. App. 3d 162, 165 (1998).  When reviewing the sufficiency of this evidence, we will reverse the trial court's order if it is against the manifest weight of the evidence.  
Edward S.
, 298 Ill. App. 3d at 165.  A judgment is against the manifest weight of the evidence when the opposite conclusion is clearly evident, plain, and indisputable.  
Edward S.
, 298 Ill. App. 3d at 165.

Section 2--107.1(a)(4)(E) of the Code (405 ILCS 5/2--107.1(a)(4)(E)(West 2000)) provides that the State must prove that the respondent lacked the capacity to make a reasoned decision about whether to take psychotropic medication.  A necessary predicate to making this informed decision is that the respondent must be informed about the medications' risks and benefits.  
Edward S.
, 298 Ill. App. 3d at 166.  Under section 2--102(a--5) of the Code (405 ILCS 5/2--102(a--5)(West 2000)), a respondent must be advised in writing about the medications' side effects.  If the respondent is not informed about the medications' harms and benefits, then a trial court's order for the involuntary administration of psychotropic medication must be reversed.  
Edward S.
, 298 Ill. App. 3d at 166.

Here, respondent was not given any written information concerning the proposed medications.  Moreover, a review of the record revealed that respondent was never verbally advised about the medications' side effects.  For example, respondent testified that no one told her about the medications' harms or benefits.  Dr. Anwar confirmed respondent's statement when he testified that he only spoke with respondent twice for, at most, a total of 10 minutes.  During these brief discussions, Dr. Anwar never spoke with respondent about the risks and benefits associated with taking the prescribed medications.  The doctor stated that he never spoke with respondent about the medications' side effects because respondent would walk away 
before
 Dr. Anwar could begin talking about the side effects.  

The State claims that 
In re Barry B.
, 295 Ill. App. 3d 1080 (1998), controls the resolution of this issue.  In 
Barry B.
, this court noted that the evidence presented in the case failed to show that the respondent was given written information about the prescribed psychotropic medication.  
Barry B.
, 295 Ill. App. 3d at 1086.  This court recognized that the Code required the doctor to give the respondent this written information.  
Barry B.
, 295 Ill. App. 3d at 1084.  However, in addressing whether the respondent had the capacity to understand his treatment options and the benefits and risks of that treatment, this court noted that the respondent's doctor discussed the prescribed medications, but the respondent refused to listen to the doctor when the doctor told the respondent about his treatment options.  
Barry B.
, 295 Ill. App. 3d at 1083, 1086.  Thus, through the respondent's own actions, the information about the medication was not discussed meaningfully.  
Barry B.
, 295 Ill. App. 3d at 1086.  

Here, in contrast to 
Barry B.
, Dr. Anwar did not inform respondent about the medications' side effects and respondent refused to 
listen
.  Rather, here, no one ever advised respondent about the prescribed medications' side effects.  In 
Barry B.
, the respondent made the choice to disregard the doctor 
while
 the doctor discussed the respondent's treatment with him.  Here, respondent was never told about the medications, and, thus, she could not choose to disregard Dr. Anwar's admonishments.

We also note that the State appears to suggest that respondent waived her right to written notification about the prescribed medications' side effects when respondent refused to discuss her treatment with Dr. Anwar.  We conclude that respondent's refusal did not constitute waiver of the statutory requirements.  The rights provided in the statute were not placed in the Code to insure that a respondent understands a medication's side effects.  Rather, these statutory rights insure that a respondent's due process rights are met and protected.  In this cause, in contrast to 
Barry B.
, the written information should have been given to respondent precisely because respondent refused to discuss the matter with Dr. Anwar when she left the discussion before Dr. Anwar could advise respondent about the medications' risks and benefits.  By giving respondent the written information, she would have been afforded the minimal amount of notice that was required under the Code.

For these reasons, the judgment of the circuit court of Kane County is reversed.

Reversed.

GEIGER and CALLUM, JJ., concur.