*In re* JOHN R. *et al.*, Alleged to Be Persons Subject to Involuntary Treatment (The People of the State of Illinois, Petitioner-Appellee, v. John R. *et al.*, Respondents-Appellants).

Fifth District   No. 5—02—0027

Opinion filed June 11, 2003.

Anthony E. Rothert, Elvis C. Cameron, and Jeff M. Plesko, all of Guardianship and Advocacy Commission, of Alton, for appellants.

Bill Mudge, State's Attorney, of Edwardsville (Norbert J. Goetten, Stephen E. Norris, and Kevin D. Sweeney, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE WELCH delivered the opinion of the court:

In this consolidated appeal, John R., Helen S., and Diana L. appeal from orders of the circuit court of Madison County, entered December 13, 2001, December 20, 2001, and December 27, 2001, respectively, finding them subject to the involuntary administration of psychotropic medications. The respondents argue that the trial court's findings that they met the statutory criteria for forced medication are against the manifest weight of the evidence. For reasons that follow, we reverse all three orders.

■ Initially, we acknowledge that the issues raised on appeal from the orders entered in this case, which orders expired 90 days after their entry (405 ILCS 5/2—107.1(a—5)(5) (West 2000)), could be considered moot. Nevertheless, we will address the questions raised in this appeal because they are capable of repetition yet might evade review because of the short duration of the orders. See *In re Richard C.*, 329 Ill. App. 3d 1090, 1093 (2002).

■ Psychotropic medications may not be administered to an adult recipient of mental health services against his will unless it has been established by clear and convincing evidence that each of the following factors is present:

A. The recipient has a serious mental illness.

B. Because of that mental illness the recipient exhibits a deterioration of his ability to function, suffering, or threatening behavior.

C. The illness has existed for a period marked by the continuing presence of the above symptoms or the repeated episodic occurrence of these symptoms.

D. The benefits of psychotropic medication will outweigh the harm.

E. The recipient lacks the capacity to make a reasoned decision about the medication.

F. Other less restrictive services have been explored and found inappropriate. 405 ILCS 5/2—107.1(a—5)(4)(A) through (a—5)(4)(F) (West 2000).

Clear and convincing evidence has been defined as that quantum of proof that leaves no reasonable doubt in the mind of the fact finder about the truth of the proposition in question. *Bazydlo v. Volant*, 164 Ill. 2d 207, 213 (1995). Although stated in terms of reasonable doubt, courts consider clear and convincing evidence to be more than a preponderance, while not quite approaching the degree of proof necessary to convict a person of a criminal offense. *Bazydlo*, 164 Ill. 2d at 213. A reviewing court will not reverse an order allowing the involuntary administration of psychotropic medication unless the trial court's findings are against the manifest weight of the evidence. *In re Jakush*, 311 Ill. App. 3d 940, 944 (2000). A judgment is considered against the manifest weight of the evidence only when an opposite conclusion is apparent or when the findings appear to be unreasonable, arbitrary, or not based on evidence. *In re Jakush*, 311 Ill. App. 3d at 944.

While each respondent challenges the trial court's findings with respect to one or more of the factors enumerated in section 2—107.1 of the Mental Health and Developmental Disabilities Code (Code) (405

ILCS 5/2—107.1 (West 2000)), all challenge the trial court's findings with respect to the question of whether the respondents lacked the capacity to make a reasoned decision about the medication. Because we conclude that the trial court's findings in this regard are contrary to the manifest weight of the evidence, we reverse on that basis.

■ The respondents argue that the State failed to prove by clear and convincing evidence that the respondents lacked the capacity to make a reasoned decision about the medication because the State failed to prove that it had complied with section 2—102(a—5) of the Code (405 ILCS 5/2—102(a—5) (West 2000)). Section 2—102(a—5) of the Code requires the treating physician to "advise the recipient, in writing, of the side effects, risks, and benefits of the treatment, as well as alternatives to the proposed treatment, to the extent such advice is consistent with the recipient's ability to understand the information communicated." 405 ILCS 5/2—102(a—5) (West 2000). The respondents argue that a necessary predicate to making a reasoned decision about whether to take psychotropic medication is being informed about the medication's risks and benefits. Thus, before a trial court can determine whether a respondent lacked the capacity to make a reasoned decision about the medication, it must determine by clear and convincing evidence that the respondent was advised of the risks, benefits, and side effects of the medication. According to the respondents, this evidence was lacking in the instant case.

■ In *In re Israel*, 278 Ill. App. 3d 24, 37 (1996), this court set forth the following factors that a court must consider in determining whether an individual lacks the capacity to make a reasoned decision concerning the administration of psychotropic medication:

1. The person's knowledge that he has a choice to make.

2. The person's ability to understand the available options and their advantages and disadvantages.

3. Whether the commitment to a mental health facility is voluntary or involuntary.

4. Whether the person has previously received the type of medication or treatment at issue.

5. If the person has received similar treatment in the past, whether he can describe what happened as a result and how the effects were beneficial or harmful.

6. The absence of any interfering pathologic perceptions or beliefs or interfering emotional states that might prevent an understanding of legitimate risks and benefits.

None of these factors are dispositive, nor are they exclusive. *In re Israel*, 278 Ill. App. 3d at 37.

■ "An individual has the capacity to make treatment decisions

for himself when, *based upon conveyed information concerning the risks and benefits of the proposed treatment and reasonable alternatives to treatment,* he makes a rational choice to either accept or refuse the treatment." (Emphasis added.) *In re Israel,* 278 Ill. App. 3d at 36. There are many situations in which the administration of drugs to an individual is clearly in that individual's best interest. *In re Israel,* 278 Ill. App. 3d at 39. However, there is also a competing constitutionally protected liberty interest to refuse the administration of psychotropic drugs. *In re Israel,* 278 Ill. App. 3d at 39. Thus, where an individual has the capacity to make the treatment decision for himself, psychotropic medication may not be forced upon him even if it is clearly in that individual's best interest.

As pointed out in *In re Israel,* 278 Ill. App. 3d at 36, before one can make a reasoned decision regarding medication, it is first necessary to be informed about the risks and benefits of the proposed course of medicine. *In re Edward S.,* 298 Ill. App. 3d 162, 166 (1998); *In re Cathy M.,* 326 Ill. App. 3d 335, 341 (2001). Thus, section 2—102(a—5) of the Code requires that the patient be informed in writing about the side effects, risks, and benefits of proposed medication. 405 ILCS 5/2—102(a—5) (West 2000). If the patient is not informed of the risks and benefits of the proposed medication, an order for the involuntary administration of medication must be reversed because the respondent has not been provided with the necessary information from which he could make a reasoned decision. *In re Edward S.,* 298 Ill. App. 3d at 166; *In re Cathy M.,* 326 Ill. App. 3d at 342; see also *In re Bontrager,* 286 Ill. App. 3d 226, 231-32 (1997) (whether the physician discussed or reviewed written explanations of benefits/side effects with the respondent as required by section 2—102 of Code (405 ILCS 5/2—102 (West 1992)) and, if so, whether the respondent failed to understand her options are important factors in determining whether the respondent lacked the capacity to make a reasoned decision about the medication).

Even where the physician has verbally advised the patient of the benefits and side effects of the medication and the patient has informed the physician that he chooses not to take the medication, the patient is still entitled to receive the written notification required by section 2—102 of the Code (405 ILCS 5/2—102 (West 2000)). *In re Richard C.,* 329 Ill. App. 3d at 1095. Verbal notification is not enough to ensure a respondent's due process rights. *In re Richard C.,* 329 Ill. App. 3d at 1095.

Nor is harmless error analysis appropriate to this question. *In re Richard C.,* 329 Ill. App. 3d at 1095. The procedural safeguards of the Code must be strictly construed in favor of the respondent, and strict

compliance therewith is compelling, because liberty interests are involved. *In re Richard C.*, 329 Ill. App. 3d at 1095. The failure to comply with the procedural rules requires the reversal of court orders authorizing involuntary treatment. *In re Richard C.*, 329 Ill. App. 3d at 1095.

■ Furthermore, a respondent cannot waive, by refusing to discuss his treatment with his physician, his right to receive the written advisories required by section 2—102 of the Code. *In re Cathy M.*, 326 Ill. App. 3d at 342-43. The rights provided in the statute were not placed in the Code to ensure that a respondent understands a medication's side effects but to ensure that a respondent's due process rights are met and protected. *In re Cathy M.*, 326 Ill. App. 3d at 343. Where a patient refuses to discuss the risks and benefits of proposed medications with his physician, it is even more important that he receive the written notification so that he will at least have the minimal amount of notice that is required under the Code. *In re Cathy M.*, 326 Ill. App. 3d at 343.

In the instant case, there is no evidence that the State complied with section 2—102(a—5) of the Code with respect to any of the respondents. The petitions themselves do not aver that the written notice required by section 2—102(a—5) of the Code was provided to the respondents.

With respect to John R., he testified that he was given a written notice with respect to one of the medications sought to be forced on him but not with respect to the other medications for which an order was sought. John R. testified that no one had ever even verbally explained to him the risks, benefits, or side effects of any of the medications. When John R.'s physician was asked whether she had informed John R. of the risks and benefits of the proposed medications, she responded, "I think so."

With respect to Helen S., her treating physician testified that she had been unable to explain to Helen S. the potential side effects of the proposed medication because Helen S. refused to listen and walked away. There was no evidence that Helen S. had been given any written notification of the risks, benefits, or side effects of the proposed medications, as required by section 2—102(a—5) of the Code.

With respect to Diana L., her physician testified that Diana L. was very uncooperative and was not willing to listen when the physician tried to explain to her the side effects of the various medications. When asked if she had taken any other steps to try to explain to Diana L. the side effects of the medications, the physician stated, "She has not really cooperated." There is no evidence that Diana L. was given the written notice required by section 2—102(a—5) of the Code.

■ The trial court in these cases did not have sufficient evidence to find that these respondents lacked the capacity to make a reasoned decision about the proposed psychotropic medications. In the absence of evidence that the respondents were informed of the risks and benefits of the proposed medications, as required by section 2—102(a—5) of the Code, the orders authorizing the involuntary administration of psychotropic medication must be reversed.

We are not unaware of *In re Barry B.*, 295 Ill. App. 3d 1080 (1998), in which this court held that the failure to give the written notification required by section 2—102(a—5) of the Code did not require the reversal of an order authorizing the involuntary administration of psychotropic medication. We note, however, that *In re Barry B.* was decided prior to subsequent decisions by the same district of this court, cited above, which unequivocally hold that the failure to give the required notification mandates the reversal of an order authorizing forced medication. We choose to follow these subsequent cases. *In re Edward S.*, 298 Ill. App. 3d 162 (1998); *In re Cathy M.*, 326 Ill. App. 3d 335 (2001); *In re Richard C.*, 329 Ill. App. 3d 1090 (2002).

Because of our resolution of this issue, we need not consider the respondents' remaining arguments. However, we wish to add a word of caution to attorneys and trial judges involved in proceedings under the Code. These proceedings should not be conducted *pro forma*. Fundamental liberty interests are involved in proceedings under the Code. *In re Cynthia S.*, 326 Ill. App. 3d 65, 68 (2001). The Code's procedural safeguards are not mere technicalities but essential tools to safeguard these liberty interests. *In re Cynthia S.*, 326 Ill. App. 3d at 69. Accordingly, those procedural safeguards are construed strictly in favor of the respondent and must be strictly complied with. *In re Cynthia S.*, 326 Ill. App. 3d at 69. The petitioner bears a substantial burden of proof that the trial judge should force the petitioner to meet with real, clear, and convincing evidence before the court enters an order infringing on the respondent's important liberty interests. We believe that every party involved in these proceedings has the best interests of the patient/respondents in mind. Nevertheless, the system can be, and has been, abused, and mistakes have no doubt been made. Accordingly, we remind the parties involved in these proceedings to be ever vigilant to protect the rights of the respondents as reflected in the Code.

For the foregoing reasons, the orders of the circuit court of

Madison County authorizing the involuntary administration of psychotropic medications are hereby reversed.

Reversed.

HOPKINS, P.J., and CHAPMAN, J., concur.