JUSTICE McBRIDE, dissenting: I respectfully dissent from the majority’s decision to reverse the trial court’s finding of guilty but mentally ill. In my opinion, this decision ignores the trial court’s well-reasoned findings, the manifest weight of the evidence standard of review and case precedent. The questions of a defendant’s sanity and mental illness are questions of fact and the fact finder’s resolution of these questions will not be disturbed unless contrary to the manifest weight of the evidence. People v. McCullum, 386 Ill. App. 3d 495, 504, 897 N.E.2d 787, 796 (2008). Because defendant bears the burden of proof, the State does not need to present expert testimony on the issue of sanity but may rely purely on facts in evidence and the inferences that follow from those facts. McCullum, 386 Ill. App. 3d at 504, 897 N.E.2d at 796. Bizarre or delusional statements do not compel an insanity finding as a defendant may suffer mental illness without being legally insane. McCullum, 386 Ill. App. 3d at 504, 897 N.E.2d at 796. Although the majority acknowledges this authority and agrees a trial court is free to reject expert opinion testimony, it concludes: “we can see no basis for doing so in this case.” 397 Ill. App. 3d at 197. It suggests there must be substantial disagreement between the experts in order to reject those opinions. This is not the law in Illinois. Here the majority adopts defendant’s argument that the trial court’s decision to reject the expert opinions was against the manifest weight of the evidence. However, as the case law makes clear, the trial court is the fact finder that must determine the credibility of the witnesses and assess the weight afforded to their testimony and the evidence at trial. McCullum, 386 Ill. App. 3d at 504, 897 N.E.2d at 796. It is not sufficient for reversal that there is evidence to support defendant’s argument, or even that, were we the trier of fact, we would have found clear and convincing proof of insanity. The standard by which we must review the trial court’s denial of defendant’s affirmative defense is whether its decision was against the manifest weight of the evidence. For a decision to be against the manifest weight of the evidence, the opposite conclusion must be clearly evident, plain, and indisputable (In re Cathy M., 326 Ill. App. 3d 335, 341, 760 N.E.2d 579, 585 (2001)), or unreasonable, arbitrary, or not based on the evidence. People v. Urdiales, 225 Ill. 2d 354, 433, 871 N.E.2d 669, 715 (2007). I cannot agree that the trial judge’s decision was against the manifest weight of the evidence. Returning to the expert testimony in this case, it is worth noting again that such testimony may be entirely rejected by the trier of fact if he or she concludes a defendant was sane, based upon factors such as whether lay testimony is based upon observations made shortly before or after the crime, the existence of a plan for the crime, and the methods undertaken by the defendant to prevent detection. McCullum, 386 Ill. App. 3d at 504-05, 897 N.E.2d at 796. The trial judge made specific findings that although defendant was mentally ill, he did not lack the substantial capacity to appreciate the criminality of his conduct. There is ample evidence in this record to support the factors listed above and the trial court’s finding of guilty but mentally ill. The lay observations made before and shortly after the attempted murder are the following. The victim, Jason, saw defendant outside the building before the attack. It was dark outside and defendant approached him from behind. The two began struggling with the knife that defendant had armed himself with before the attack. Although defendant seriously wounded the victim, he stopped the attack as soon as Jason’s mother screamed and asked what was going on outside. Defendant fled upstairs and immediately told Jason’s father that it was Jason who had stabbed defendant. Defendant ran to his apartment, discarded the knife, took off his bloody clothes and would not open the door when Jason’s father began knocking on it, demanding that the door be opened. Only when the police arrived, did defendant open the door. Defendant’s first statements about the attack to the responding officer was that Jason stabbed defendant and Jason jumped on defendant. When asked about the knife, defendant first pointed to the pantry and then indicated the knife was in the kitchen pantry. Before the police arrived, defendant had already taken off his bloody clothes because he did not want his mother to become frightened at the sight of them. All this took place, as the majority states, “in the grip of a psychotic delusion.” 397 Ill. App. 3d at 196. Only after the initial meeting with the police on the scene and after time for contemplation did defendant begin ranting about Jesus and Satan. His hyper-religious delusions notwithstanding, his delayed and after-the-fact ranting illustrate that defendant, without a doubt, had the substantial capacity to appreciate the criminality of his conduct. Although the majority details his longstanding mental illness and his multiple hospitalizations, on only a handful of occasions had defendant waged attacks on others. Each time defendant was being told by God or Jesus to commit the attacks. As the State argued, defendant was familiar with the system and “he use[d] the fact that God has told him to act as an excuse for his behavior as he did in this case.” Defendant told authorities after his arrest that he was, indeed, suffering from “ ‘delusions’ ” and wanted to go to “ ‘Chester’ ” because it was a nice place. Chester is a mental health center where defendant had spent a considerable amount of time. Despite his history of mental illness, the two experts could not even agree on the particular mental illness defendant suffered from. Neither one of the experts examined him close in time to the stabbing. Neither one saw any need to rule out malingering. Neither one secured the records from Dr. Reeves, who was treating defendant at or near the time of this attack. The one psychiatrist who actually was aware of defendant’s mental condition near the time of this offense was never consulted. Dr. Gutzman was not aware that defendant initially tried to shift blame for the crime to the victim. Additionally, and certainly damaging to Dr. Gutzman’s credibility was the fact that when she interviewed defendant regarding his sanity after he had been restored to fitness, she only examined him for 25 minutes and did not ask defendant one single question about the crime or the actions he took that day. The majority seems to suggest that because there was no motive other than the defendant’s subsequent delusional statements about the victim being Satan and that God had directed him to kill Satan, the psychiatric expert testimony must be accepted. I disagree. Any number of crimes could be termed senseless and seemingly without any rational motive. As pointed out above, bizarre behavior and delusional statements do not compel an insanity finding because a defendant may suffer mental illness without being legally insane. Moreover, the factors to look at in this case are not defendant’s motives, but lay observations made shortly before or after the crime, the existence of a plan, and the methods undertaken to prevent detection. McCullum, 386 Ill. App. 3d at 505, 897 N.E.2d at 796. These factors were established at defendant’s bench trial. Simply because defendant fled for his own apartment does not negate the fact that he committed this crime after dark, when the victim was alone. Defendant also approached the victim from behind, obviously attempting to catch Jason off guard. Defendant attacked the victim with a knife and struggled with him, but fled upon hearing Jason’s mother screaming. Defendant accused the victim of being the attacker, refused entry to Jason’s father, and he hid the knife and took off the bloody clothes that he was wearing. It was reasonable for the trial court to infer that defendant did all these things because he had a plan and wanted to prevent detection. Again, because defendant was not successful in evading the police does not mean he was insane at the time of this offense. The trial court did not have to accept the conclusions of two doctors who examined defendant for his sanity long after the fact and for less than two hours in total. The trial court listened to the witnesses, weighed the evidence, made reasonable findings, and did not conclude that defendant was insane at the time he committed this offense. I would affirm the finding of guilty but mentally ill and the sentence imposed.