No. 2--97--1002

________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

________________________________________________________________

In
 
re
 EDWARD S., Alleged to     ) Appeal from the Circuit Court

be a Person in Need of       ) of Kane County.

Involuntary Psychotropic )

Medication ) No. 97--MH--300

)

(The People of the State of   )

Illinois, Petitioner-Appellee, ) Honorable

v. Edward S., Respondent- ) Robert L. Janes,

Appellant). ) Judge, Presiding.

________________________________________________________________

JUSTICE INGLIS delivered the opinion of the court:

Respondent, Edward S., appeals the order of the circuit court of Kane County authorizing the Elgin Mental Health Center to administer psychotropic medication and to perform various laboratory tests and medical examinations.  We reverse.

On September 2, 1997, Dr. Farazana Husain of the Elgin Mental Health Center petitioned the circuit court for permission to administer antipsychotic and mood-stabilizing medication and to perform medical testing on respondent.  On that same day, respondent was personally served with notice that the hearing on the medication petition would be held on September 5, 1997.  On September 5, 1997, the medication petition was not heard, but, instead, the circuit court held a hearing on the petition to involuntarily commit respondent.  The involuntary commitment of respondent is not at issue in this appeal.

On September 10, 1997, a second petition to administer psychotropic medication was filed with the circuit court.  Dr. Herbert Rohr petitioned the court for permission to administer the antipsychotic drugs Haldol, Prolixin, Thorazine, Olanzapine, Resperidone, and Navane.  He also requested permission to use  mood-stabilizing drugs, such as lithium, Tegritol, Depakote, Ativan, and Klonopin, and side-effect medications, such as Cogentin and Benadryl, if needed.  Dr. Rohr also requested permission to administer blood tests, when necessary, to determine the levels of medication in respondent’s body and monitor respondent’s heart, liver, kidney and thyroid as indicated by good medical practice.  Dr. Rohr’s petition was dated September 9, 1997.  The affidavit of service for this petition indicated that it was personally served on respondent on September 8, 1997, for hearing on September 12, 1997.  The record does not show that any attorney for respondent was served with notice of the hearing on the medication petition.

The hearing on the second medication petition was held on September 12, 1997.  Before proceeding on the medication petition, the State reopened its case on respondent’s involuntary commitment, adding Dr. Rohr’s testimony.  The circuit court entered the final order in the commitment case and then proceeded to hear the medication petition.  Respondent’s counsel noted that there were two separate medication petitions and there was a problem with notice on the second petition.  After an off-the-record discussion, respondent’s attorney stated that she was ready to proceed.

Dr. Rohr, the State’s only witness, testified that, in his opinion, respondent was a chronic paranoid schizophrenic.  Dr. Rohr testified that respondent had refused to speak with him and that he based his opinion on records, personal observation, and discussions with respondent’s family and the staff of the Elgin Mental Health Center.  Dr. Rohr testified that respondent had been a patient at the Elgin Mental Health Center for a short time in 1993 and that he had never taken any psychotropic medications.

Dr. Rohr testified that, according to respondent’s parents, they had supported respondent for the past four or five years.  During the previous year, respondent had begun to believe that his water and food were poisoned.  Respondent’s parents also reported that he had lost weight, stopped properly attending to his personal hygiene, and had been threatening and aggressive toward them.  Dr. Rohr also noted that, several days before the hearing, respondent had pushed another patient to the floor.

Dr. Rohr testified that, in his opinion, the administration of antipsychotic medication would clear up respondent’s delusional system.  Dr. Rohr testified about Haldol, Olanzapine, and Resperidone, all of which are antipsychotic medicines.  While he did not make a recommendation as to which to use with respondent, he testified about their benefits and side effects.  Dr. Rohr also testified that his recommendation for administering mood-stabilizing drugs was based on respondent’s behavior during his 1993 admission to the Elgin Mental Health Center.  Dr. Rohr concluded that the benefit accruing to respondent from the administration of psychotropic medication outweighed the harm.

Dr. Rohr testified that respondent had realized and exercised his right to refuse medication.  Dr. Rohr did not believe that respondent had the capacity, however, to make a reasoned decision about refusing medication.  Dr. Rohr testified that, while he had not been able to discuss the advantages and disadvantages of the medicines, Dr. Husain had apparently written a note that she discussed this with respondent.

Dr. Rohr testified that respondent had been eating and drinking while residing at the Elgin Mental Health Center.  He further testified that, due to respondent’s poor cooperation, the less restrictive therapies, such as group and individual therapy, had been unsuccessful.  Dr. Rohr opined that respondent would not improve without medication and recommended that he receive medication for the maximum period of 90 days.

Respondent’s attorney did not call any witnesses and argued only that the State failed to meet its burden of proof.  The circuit court found that the State had proved, by clear and convincing evidence, the need to administer psychotropic medicine to respondent.  The circuit court found that respondent had a serious mental illness, had refused psychotropic medication, exhibited a severe deterioration in his ability to function, the illness had existed for a period of time, the benefits of psychotropic medication outweighed its harm, respondent lacked the capacity to make a reasoned decision about receiving medication, and that other, less restrictive services had been attempted and found to be inappropriate.  The circuit court granted the petition for a period of no more than 90 days.  Respondent timely appeals.

Respondent first challenges the sufficiency of the State’s evidence.  When reviewing the sufficiency of the evidence, a reviewing court will reverse the fact finder’s determination only if it is against the manifest weight of the evidence.  
In re Jeffers
, 239 Ill. App. 3d 29, 35 (1992).  A trial court’s decision is against the manifest weight of the evidence if the opposite conclusion is clearly evident, plain, and indisputable.  
Jeffers
, 239 Ill. App. 3d at 35.  Respondent argues that the State did not present clear and convincing evidence that respondent lacked the capacity to make a reasoned decision about his medication.  We agree.

In a hearing pursuant to section 2--107.1 of the Mental Health and Developmental Disabilities Code (Code) (405 ILCS 5/2--107.1 (West 1996)), the State must prove, among other things, that the respondent lacks the capacity to make a reasoned decision regarding the administration of psychotropic medication and must prove this by clear and convincing evidence.  405 ILCS 5/2--107.1(a)(4)(E) (West 1996).  Before one can make a reasoned decision regarding medication, it is first necessary to be informed about the risks and benefits of the proposed course of medication.  The Code requires that the patient be informed in writing about the side effects of proposed medication.  405 ILCS 5/2--102(a) (West 1996).  If a patient is not informed of the risks and benefits of proposed medication, an order for the involuntary administration of medication must be reversed.  
In re Bontrager
, 286 Ill. App. 3d 226, 231-32 (1997).

After careful review of the record, we conclude that the State failed to prove that it apprised respondent of the risks and benefits of its proposed course of medication.  The record indicates that Dr. Rohr spoke with respondent for two minutes and did not discuss medication with him.  Dr. Rohr testified that "Dr. Husain apparently wrote a note that she had at least attempted to discuss it with" respondent.  Dr. Rohr was unable to recall when respondent was supposed to have spoken with Dr. Husain, but believed that it was shortly after respondent had arrived at the Elgin Mental Health Center.  Dr. Husain did not testify at the hearing.  Based on this record, we must conclude that the State failed to prove, by clear and convincing evidence, that respondent was informed of the risks and benefits of the administration of psychotropic medication. The hearsay testimony concerning the contents of Dr. Husain’s note, while admissible to show the basis of Dr. Rohr’s opinion, is simply insufficient (as well as inadmissible) to demonstrate, much less by clear and convincing evidence, that the State provided respondent with the necessary information from which he could make a reasoned decision.  Moreover, the record does not even indicate that the State made a diligent effort to apprise respondent of the risks and benefits of psychotropic medication.  Accordingly, we hold that the circuit court’s order to involuntarily administer psychotropic drugs to respondent was manifestly erroneous.  Because of our resolution of this issue, we need not consider respondent’s remaining arguments.

The judgment of the circuit court of Kane County is reversed.

Reversed.

GEIGER, P.J., and DOYLE, J., concur.