*In re* CHRISTOPHER P., a Person Asserted to Be Subject to the Involuntary Administration of Psychotropic Medication (The People of the State of Illinois, Petitioner-Appellee, v. Christopher P., Respondent-Appellant).

Fifth District    No. 5—02—0198

Opinion filed July 29, 2003.

Anthony E. Rothert, Elvis C. Cameron, and Jeff M. Plesko, all of Guardianship and Advocacy Commission, of Alton, for appellant.

William Haine, State's Attorney, of Edwardsville (Norbert J. Goetten, Stephen E. Norris, and Sharon Shanahan, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE MAAG delivered the opinion of the court:

The respondent, Christopher P., appeals the circuit court's order finding him to be a person subject to the involuntary administration of psychotropic medication. We reverse.

On February 8, 2002, Dr. Jagannath Patil filed a petition for the involuntary administration of nonemergency psychotropic medication for the respondent. Dr. Patil sought an authorization to involuntarily administer four psychotropic medications (Risperidone, Ativan, and the alternative medications Haldol and injectable Haldol Decanoate) to the respondent on a nonemergency basis. The petition stated, "[The respondent] suffers from a major psychiatric illness manifested by

delusional beliefs, disorganized thinking, aggressive behaviors, etc.[,] and refuses to take any psychotropic medications." Dr. Patil's diagnosis for the respondent's illness was "Schizophrenia, Paranoid Type."

Dr. Kanwal Mahmood, a psychiatrist at Alton Mental Health Center, testified that the respondent had been admitted to Alton Mental Health Center on February 5, 2002. Dr. Mahmood had reviewed the respondent's records and discussed the case with his treating psychiatrist, Dr. Patil. Dr. Mahmood attempted to meet with the respondent the day before the hearing, but he refused to speak to her since she was a female. Dr. Mahmood explained that the respondent had refused treatment from any female and refused to talk to females. Dr. Mahmood claimed that the respondent had not eaten for at least three or four days because he believed that his food was poisoned. He refused to eat anything at Alton Mental Health Center because he thought he was in the "enemy house." Dr. Mahmood stated that the respondent wanted to be released and claimed that he was going to sue Alton Mental Health Center because it was his "enemy." Dr. Mahmood described the respondent as "isolative," explaining that he refuses to talk with the treatment team, with the exception of a few males, and that he stays in his room. Dr. Mahmood stated that the respondent had been charged with the crimes of disorderly conduct and aggravated battery to a police officer arising from an incident when he wanted to photograph a woman and placed his arm in front of her face. When the police attempted to arrest him, he pulled away and struck a police officer.

Dr. Mahmood testified that the respondent had been on psychotropic medication in the past but that the records were unclear about what medications he had taken. The treatment team determined that the respondent should take Risperidone and Ativan. The treatment team decided that if Risperidone proved to be ineffective, Haldol or Haldol Decanoate should be used as a backup. Dr. Mahmood stated that Risperidone and Haldol would render the respondent fit to stand trial. She said that these medications would enable the respondent to have reality-based thinking and that his delusions would not interfere with his functioning. Dr. Mahmood also testified regarding the expected benefits of the medications and the dosage ranges. Dr. Mahmood opined that the benefits of taking the medication outweighed the risks of harm. When Dr. Mahmood was asked whether less restrictive treatment services such as counseling, education, or therapy would be adequate without medication to properly treat the respondent, she stated "No." She was not asked if other alternatives had been explored.

Dr. Mahmood stated that the respondent was suffering due to the

fact that he had not eaten much since his arrest. She claimed that he had exhibited threatening behavior prior to his arrest and that he was unfit to stand trial. She opined that, without medication, the respondent's ability to function would continue to deteriorate or he would remain in a deteriorated condition. Dr. Mahmood stated that she did not think that the respondent had the capacity to make a reasoned and informed decision about whether he should or should not take the prescribed medication.

On cross-examination, Dr. Mahmood admitted that the respondent had not engaged in any threatening behavior since his arrest, but she stated that he had shown agitation over the unit's rules. Dr. Mahmood explained that even if the respondent had been out on bond since his arrest in September until February (when he was brought to the Alton Mental Health Center) and had not been in any trouble with the law for engaging in threatening behaviors, she would not change her opinion that the respondent was in need of psychotropic medications. Dr. Mahmood also indicated that the respondent had not been in any fights since his admission.

Although Dr. Mahmood did not personally discuss the benefits and risks of the proposed medications with the respondent, she read Dr. Patil's initial treatment recommendations from the respondent's chart, which stated as follows:

"I've explained the benefits and risks of Resperidone [*sic*] and Haldol to this patient. He's thoroughly psychotic. And based on his delusion[al] beliefs of a persecuted nature and refuses [*sic*] to take any medication, he states that he will not take any medication, and whenever we give him a shot[,] he will take it, but \*\*\* he would like to have a return paper about his refusal."

Dr. Mahmood admitted that there was no documentation indicating that the respondent had been told about the benefits and risks of Ativan.

The respondent moved for a directed finding based upon this court's opinion in *In re Edward S.*, 298 Ill. App. 3d 162, 698 N.E.2d 186 (1998), that the only basis for believing that information about the benefits and risks of the proposed medications had been given to the respondent was a reference to an "out-of-court statement being offered for the truth of the matter asserted" rather than the basis for an opinion that the benefits and risks of the two medications had been explained to the respondent. Additionally, the record shows that no risk information or benefit information regarding Ativan had ever been given to the respondent. The State responded by suggesting that it was sufficient that the respondent was present in open court when Dr. Mahmood discussed the benefits and risks of the medications.

Also, the State claimed that because *In re Edward S.* was an Appellate Court, Second District, decision, it should not control this court's decision. The circuit court did not agree with the State's reasoning that the doctor's explanation of the benefits and risks of Ativan while the respondent was present in open court was sufficient. The circuit court then allowed the respondent's motion for a directed finding on Ativan only.

Dr. Mahmood was recalled by the respondent's counsel as an adverse witness. The respondent's counsel presented Dr. Mahmood with the respondent's records from Choate Mental Health Center. Dr. Mahmood agreed that the respondent's admission to Choate Mental Health Center was voluntary and that it was his only admission to the Department of Human Services. Dr. Mahmood listed the side effects from Risperidone and Haldol, and she claimed that Dr. Patil would have explained the side effects to the respondent based upon the information contained within the pamphlet. Dr. Mahmood testified that the respondent had previously taken Trilafon, lithium, and Prolixin during his admission to Choate Mental Health Center and in 1992 when he was in a Veterans Administration hospital in Virginia.

The respondent testified that he did not believe that the food at Alton Mental Health Center was poisoned. Explaining that he refused to eat the food at Alton Mental Health Center because he had sued the Department of Human Services for falsifying documents, the respondent stated, "I just couldn't *** understand eating from someone who I am suing." He stated that because of the lawsuit he had filed, he could not trust the people working at the center. The respondent claimed that he had not taken any psychotropic medication for at least seven years. During that time, he had no trouble living on his own, paying his bills, or caring for himself. Prior to his admission to Alton Mental Health Center, he lived in an apartment in Murphysboro and got along fine with his landlord, who lived next door. The respondent cooked for himself and managed his own money. After his arrest in September, the respondent remained in jail for a few days and bonded himself out. He appeared at seven pretrial hearings while living independently at his apartment. He had no problems with other people while he was free on bond. The respondent claimed that his fitness evaluation had been conducted over the telephone while he was living at home. The respondent stated that he had received Risperidone in the past and that he did not like taking it because it exacerbated his problems with sexual dysfunction. The respondent stated that he was admitted to Choate Mental Health Center in 1993 due to side effects from taking Haldol. He claimed that when he had previously taken Haldol, it caused his wrists to twist and

curl involuntarily. The respondent said that the malpractice began in 1993 and that he filed his lawsuit in 2001. The respondent stated that he had been offered no treatment other than medication at Alton Mental Health Center.

Subsequent to the parties' closing arguments, the circuit court found that the respondent was a person subject to the involuntary administration of psychotropic medications, and the court entered an order authorizing the administration of Risperidone and Haldol. The respondent filed a timely *pro se* notice of appeal. The State did not appeal the circuit court's denial of permission to utilize Ativan.

The respondent challenges the sufficiency of the State's evidence. The respondent claims that the State failed to provide clear and convincing evidence that he lacked the capacity to make a decision about treatment with nonemergency psychotropic medication. Specifically, the respondent contends that the State could not present clear and convincing evidence that he could not make a reasoned decision about the nonemergency medications without showing that he was informed about the risks and benefits of the proposed medications. We agree.

■ On review, the circuit court's factual findings are entitled to great deference because it stands in the best position to weigh the credibility of all the witnesses. Therefore, we will not reverse a circuit court's decision merely because we might have come to a different conclusion, but instead, we will reverse only if the circuit court's decision is manifestly erroneous. A circuit court's decision is not manifestly erroneous unless the error is clearly evident, plain, and indisputable. *In re Jeffers*, 239 Ill. App. 3d 29, 35, 606 N.E.2d 727, 731 (1992).

■ Pursuant to section 2—107.1 of the Mental Health and Developmental Disabilities Code (Code) (405 ILCS 5/2—107.1 (West 2002)), the State must prove, among other things, that the respondent lacks the capacity to make a reasoned decision regarding the administration of psychotropic medication, and it must prove this by clear and convincing evidence. 405 ILCS 5/2—107.1(a—5)(4)(E) (West 2002). "Before one can make a reasoned decision regarding medication, it is first necessary to be informed about the risks and benefits of the proposed course of medication." *In re Edward S.*, 298 Ill. App. 3d at 166, 698 N.E.2d at 188. Additionally, according to *In re Edward S.*, section 2—102(a) of the Code requires that the patient be informed in writing about the side effects of proposed medication. *In re Edward S.*, 298 Ill. App. 3d at 166, 698 N.E.2d at 188; 405 ILCS 5/2—102(a) (West 1996) (now see 405 ILCS 5/2—102(a—5) (West 2002)). *In re Edward S.* states that if a patient is not informed of the risks and benefits of proposed medication, an order for the involuntary

administration of medication must be reversed. *In re Edward S.*, 298 Ill. App. 3d at 166, 698 N.E.2d at 188. We disagree.

■ According to section 2—102(a—5) of the Code:

"[T]he physician or the physician's designee shall advise the recipient, *in writing*, of the side effects, risks, and benefits of the treatment, as well as alternatives to the proposed treatment, *to the extent such advice is consistent with the recipient's ability to understand the information communicated.* The physician shall determine and state in writing whether the recipient has the capacity to make a reasoned decision about the treatment." (Emphasis added.) 405 ILCS 5/2—102(a—5) (West 2002).

The decisions in *In re Edward S.* and *In re Barry B.*, 295 Ill. App. 3d 1080, 693 N.E.2d 882 (1998) (superseded by statute in *In re Jennifer H.*, 333 Ill. App. 3d 427, 775 N.E.2d 616 (2002)) (the court found that the circuit court had properly determined that a patient lacked the capacity to make a reasoned decision regarding psychotropic medications, so the risk/benefit information in writing was unnecessary), clearly ignore the fact that a circuit court must determine, based upon competent medical testimony, whether the patient has the ability to understand the risks and benefits of treatment or if the patient has pathological perceptions or beliefs that prevent him from understanding the information. If the patient lacks this ability, there is no requirement, by statute, that he be given written advisements of these options, advantages, and disadvantages. Hence, in the instant case, the real issue is whether the State showed, by clear and convincing evidence, that the respondent lacked the capacity to understand the risks and benefits of the medications. We find that the State failed to do so.

In *In re Richard C.*, 329 Ill. App. 3d 1090, 769 N.E.2d 1071 (2002), this court determined that because the respondent's psychiatrist had not informed him, in writing, about the risks and benefits of the psychotropic medication, his due process rights had been violated. The court made this determination in spite of the fact that the psychiatrist had repeatedly tried to explain the benefits and side effects of Haldol to the respondent and the respondent had launched into paranoid tirades and said that the drugs were poison. The *In re Richard C.* court determined that even though the respondent had said that the drugs were "poison," this did not mean that the respondent was not entitled to be informed in writing. The court further found that "[c]ontrary to the State's contention, this right of written notification is not subject to a harmless error analysis," because the statutory rights ensure that the respondent's due process rights are met and protected. *In re Richard C.*, 329 Ill. App. 3d at 1095, 769 N.E.2d at

1075. The necessity for strict compliance with mental health statutory provisions is compelling due to the fact that liberty interests are involved. The Code's procedural safeguards are not mere technicalities but essential tools to safeguard the liberty interests of mental health patients. Hence, procedural safeguards are construed strictly in favor of the respondent. The failure to comply with procedural rules requires the reversal of court orders. The *In re Richard C.* decision also pointed out that even though the respondent had told his doctor that he did not want to take the medication because it was "poison," this made the requirement of written notification of greater value and importance. If the respondent had received written information, he would have had the opportunity to review the information at a time and in a manner of his choosing.

In contrast, the court in *In re Barry B.*, 295 Ill. App. 3d at 1088, 693 N.E.2d at 887, affirmed the circuit court's order subjecting a respondent to the involuntary administration of psychotropic medication despite the fact that the respondent had not been given written information about the prescribed psychotropic medication. However, in *In re Barry B.*, the evidence of the respondent's inability to understand the risks and benefits of the medication was overwhelming.

█ In the instant case, such overwhelming evidence is lacking. Here, the respondent apparently understood that he could refuse to take psychotropic medication, and he did so. The respondent gave a valid explanation for not wanting to eat at the Alton Mental Health Center. He stated that he did not wish to eat the center's food because he had sued the center. The respondent testified that he had previously taken Risperidone and Haldol and that the Risperidone had exacerbated his problems with sexual dysfunction. As we have previously stated, the respondent testified that he had been voluntarily admitted to Choate Mental Health Center in 1993 due to the side effects of taking Haldol. He claimed that when he took Haldol previously, it caused his wrists to twist and curl involuntarily. When Dr. Mahmood was asked whether the respondent had the capacity to make a reasoned decision regarding medication, she answered, "I don't think so." Even if the respondent's paranoia interfered with the discussions about the medication, it does not mean that the respondent could have neither understood nor utilized the information provided in writing. We also note that even if Dr. Patil had informed the respondent verbally regarding the benefits and risks of the medication, our decision would be the same. The record is completely devoid of any evidence that the respondent was informed about the risks and benefits of the medication in writing pursuant to section 2—107.1 of

the Code (405 ILCS 5/2—107.1 (West 2002)), and because we have determined that the State failed to show that the respondent was incapable of understanding this information, we must reverse.

Because we have determined that the respondent should have been informed in writing about the risks and benefits of the psychotropic medication, we need not address the respondent's remaining contentions of error.

For the foregoing reasons, the judgment of the circuit court of Madison County is reversed.

Reversed.

CHAPMAN and DONOVAN, JJ., concur.