NO. 4-02-1041

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

In the Matter of STEVEN P., a Person Found Subject to Involuntary Treatment,

THE PEOPLE OF THE STATE OF ILLINOIS,

          Petitioner-Appellee,

          v.

STEVEN P.,

          Respondent-Appellant.

)

)

)

)

)

)

)

)

  Appeal from

  Circuit Court of 

  Champaign County

  No. 02MH44

     

  Honorable

  Michael Q. Jones,­

  Judge Presiding.

______________________________________________________________ 

PRESIDING JUSTICE MYERSCOUGH delivered the opinion of the court:

In November 2002, the State named respondent, Steven P., in a petition for involuntary administration of drugs and the use of electroconvulsive therapy (ECT) due to his mental condition.  Following a hearing, the trial court granted the petition author­izing ECT and involuntary administra­tion of medication.

On appeal, respondent argues (1) the State failed to prove by clear and convincing evidence that less-restrictive services other than ECT were inappropriate to treat his condition, and (2) he was not advised in writing of the side effects, benefits, and alternatives to the proposed treatment.  We affirm.

I. BACKGROUND

In November 2002, the State named respondent in a petition for administration of authorized involuntary treatment based on his suffering from a serious mental illness, namely, bipolar affective disorder with psychotic symptoms and manic state.  Because of his illness, respondent exhibited deterioration of his ability to function, remained delusional, and was unable to weigh the risks and benefits of treatment, and his intermittent use of medication had not improved his symptoms.  In the petition, Dr. Hayng-Sung Yang found respondent to be in need of involuntary treatment because the benefits of treatment outweighed the harm, he lacked the capacity to make a reasoned decision about treatment, and other, less-restrictive services were explored and found inappro­priate.  Dr. Yang indicated the administration of ECT and psychotropic medication were essential for the safe and effective administration of treatment.

The trial court conducted a hearing on the petition.  Dr. Yang testified he has been a psychiatrist since 1974.  He stated respondent came under his care at the Provena Covenant Medical Center psychiatric unit about three weeks prior to the hearing.  During his care, Dr. Yang found respondent to be "religiously delusional," believing himself to be in perfect health.  Respondent thinks he is depressed while "showing [a] rather elated, excited, [and] irritable mood."  Dr. Yang diagnosed respondent with manic depression, a manic condition with psychotic symptoms.  Respondent did not show much improvement because he did not regularly take his medication.  Dr. Yang opined respondent's mental illness rendered him incapable of rationally weighing the risks and benefits involved in the treatment options available to him.  

Dr. Yang recommended ECT, which he stated is used when a patient is extremely depressed, suicidal, or suffering from a manic condition.  Dr. Yang stated respondent had no other alternative because he refused to take oral medication, such as Depakote, lithium, and Tegretol, to improve his manic condition.  He also sought court authority to administer a number of drugs, including Zyprexia (a mood stabilizer), lithium carbonate, Depakote, Haldol Decanoate, and Cogentin (to alleviate the side effects of Haldol).

Respondent testified he no longer needed Depakote or lithium, but instead he needed to go home and have "more home cooking."  He stated he was forced to take pills every day and suffered from screaming, throwing up, and shaking in the night.  Respondent indicated the lithium "makes [his] mind unclear."  Further, he had ECT about five years ago and it "helped [him] somewhat."  

The State sought authority to administer for 90 days ECT for a maximum of 12 times, Zyprexia, lithium carbonate, Depakote, Cogentin, Haldol Decanoate, general anesthesia, restraints, and blood tests.  The trial court found by clear and convincing evidence that respondent has a serious mental illness, exhibiting a deterioration of his ability to function that existed for a period of time marked by the continuing presence of the symptoms.  The court also found the benefits of the treatment outweighed the harm and other, less-restrictive services were explored and found inappropriate.  The court then authorized the administration of ECT and the various medications.  Following the appointment of the Guardianship and Advocacy Commission as respondent's counsel, this appeal followed.

II. ANALYSIS

Respondent argues the State failed to prove by clear and convincing evidence that he lacked the capacity to make a reasoned decision about his treatment because he was not advised in writing of the side effects, risks, benefits, and alternatives to the proposed treatment as required by law.  We disagree even though the State concedes this issue.

To administer authorized involuntary treatment, the State must prove by clear and convincing evidence that, 
inter
 
alia
, the recipient lacks the capacity to make a reasoned decision about the treatment.  
In re Edward S.
, 298 Ill. App. 3d 162, 166, 698 N.E.2d 186, 188 (1998).  When reviewing the sufficiency of the evidence, the trial court's decision will be reversed only if it is against the manifest weight of the evidence.  
In re Richard C.
, 329 Ill. App. 3d 1090, 1094, 769 N.E.2d 1071, 1075 (2002).  "A judgment is against the manifest weight of the evidence when the opposite conclusion is clearly evident, plain, and indisputable."  
In re Cathy M.
, 326 Ill. App. 3d 335, 341, 760 N.E.2d 579, 585 (2001).  

Section 2-107.1(a)(4)(E) of the Mental Health and Developmental Disabilities Code (Code) provides the State must prove the respondent lacked the capacity to make a reasoned decision about the treatment.  405 ILCS 5/2-107.1(a)(4)(E) (West 2000).  A necessary predicate to making this informed decision is that the respondent must be informed of the risks and benefits of the medication and treatment.  
Cathy M.
, 326 Ill. App. 3d at 341, 760 N.E.2d at 585.  To that end, the Code states: 

"If the services include the admini­stration of authorized involuntary treatment, the physician or the physician's designee shall advise the recipient, in writing, of the side effects, risks, and benefits of the treatment, as well as alternatives to the proposed treatment, to the extent such advice is consistent with the recipient's ability to under­stand the information communicated."  405 ILCS 5/2-102(a-5) (West 2000).

In 
Cathy M.
, the evidence showed respondent was given no written or oral advice about the medications' side effects.  The treating psychiatrist so testified.  The doctor never spoke with respondent about the side effects because she walked away when he spoke to her.  For that reason, the court found written notice was required to provide the minimal amount of notice required under the Code.  

"In this cause,
 *** the written information should have been given to respondent precisely because respondent refused to discuss the matter with Dr. Anwar when she left the discussion before Dr. Anwar could advise respondent about the medications' risks and benefits.  By giving respondent the written information, she would have been afforded the minimal amount of notice that was required under the Code."  
Cathy M.
, 326 Ill. App. 3d at 343, 760 N.E.2d at 586.

In contrast, in 
In re Barry B.
, 295 Ill. App. 3d 1080, 1086, 693 N.E.2d 882, 885 (1998), the respondent refused to listen to the doctor when the doctor told respondent about his treatment options.  So, therefore, through the respondent's own actions, the side effects were not discussed meaningfully.  But see 
In re John R.
, 339 Ill. App. 3d 778, 792 N.E.2d 350 (2003).  In our case, the record is silent on written and oral attempts to notify Steven P. of side effects.  However, Steven P. was clearly present at the hearing and heard the doctor's testimony.  He also testified and had previously taken most of these medications and received ECT treatment and been helped by both.  In this hearing, respondent was adequately notified of the treatment requested.  

No evidence was presented as to prior notification.  Absent any objection, we assume the doctor complied with the statute and did what he was required to do.  Any absence of written advice should have been raised in the trial court, where it could have been addressed, and if there were a problem, it could have been cured. 

Respondent has forfeited the notification issue by failing to raise it at the hearing or in a posttrial motion.  
People v. Bull
, 185 Ill. 2d 179, 207, 705 N.E.2d 824, 838 (1998); 
People v. Enoch
, 122 Ill. 2d 176, 185-86, 522 N.E.2d 1124, 1129 (1988).  Moreover, the evidence was clear and convincing that respondent could not make a rational choice whether to seek treatment for his mental illness or to weigh the risks and benefits of the treatment options.  

"Q. [MR. FLETCHER (Assistant State's Attorney)]:  In your expert opinion is Mr. Prye capable of making an informed and rational choice about whether to seek medical treatment for his mental illness?

A.  [DR. HAYNG-SUNG YANG]:  No.

Q.  In your expert opinion is he capable of rationally weighing the risks and benefits involved in the treatment options available to him?

A.  No.

Q.  And that's because of mental illness?

A.  Yes.

Q.  Okay.  You indicated that [respondent] in the past has not been willing to receive treatment for his mental illness.  Do you now have any reason to believe he would be cooperative now?

A.  Last [
sic
] December he has not shown any cooperation for the treatment, what I believe that will work for him, and the last three years he has been in and out of the psychiatric hospital.  I was told that he was not cooperating with treatment, even before he became my patient."

Therefore, 
the State has shown by clear and convincing evidence that respondent's emotional state prevented him from being able to understand the risks and benefits of medication.

Recently, in 
In re Christopher P.
, No. 5-02-0198, slip op. at 7 (July 29, 2003), _ Ill. App. 3d, _ , _ N.E.2d _ , the Fifth District recognized the error of its previous decisions, which held the risk-benefit information must always be in writing before forced medication may be authorized, and concluded:

"[A] circuit court must determine, based upon competent medical testimony, whether the patient has the ability to understand the risks and benefits of treatment or if the patient has pathological perceptions or beliefs that prevent him from understanding the information.  If the patient lacks this ability, there is no requirement, by statute, that he be given written advisements of these options, advantages, and disadvantages." Christopher P., slip op. at 8,  __ Ill. App. 3d at __, __ N.E.2d at __ .

However, in 
Christopher P.
, the court found the State had failed to show by clear and convincing evidence that respondent lacked the capacity to understand the risks and benefits of the medication.

Under these circumstances, the advice to respondent about the involuntary treatment did not have to be in writing.  The language in the statute actually contemplates this situation where respondent cannot comprehend written advice--"shall advise *** to the extent such advice is consistent with the recipient's ability to understand the information communicated."  405 ILCS 5/2-102(a-5) (West 2000).  Moreover, the options available were made clear to respondent in the hearing, and, therefore, any error was harmless.   

Finally, the State did clearly and convincingly prove less-restrictive services were inappropriate.  Psychotropic medications, a less-restrictive treatment, were 
not
 available and appropriate here.  Dr. Yang, respondent, and respondent's counsel concede that respondent refused to take the psychotropic medications, and respondent had not improved during his hospital stay.   

III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

COOK, J., concurs.

TURNER, J., dissents.

JUSTICE TURNER, dissenting:

I respectfully dissent.  The State concedes the trial court's order must be vacated, and the State's concession is for good reason.  If the respondent is not informed in writing of the risks and benefits of the medication and treatment, the court's order for the involuntary administration of medication or therapy must be reversed.  See 
Cathy M.
, 326 Ill. App. 3d at 342, 760 N.E.2d at 585; 
Edward S.
, 298 Ill. App. 3d at 166, 698 N.E.2d at 188.  

In the case 
sub
 
judice
, Dr. Yang did not indicate he informed respondent either orally or in writing as to the benefits and risks of drug therapy or ETC.  A review of the record supports the State's concession that it failed to prove respondent was informed of the risks and benefits of the proposed treatment as required by the Code.  Thus, the trial court erred in ordering respondent to be subjected to the involuntary administration of ECT and medication.  I would, therefore, accept the State's concession and reverse the trial court's judgment.

In support of its conclusion that strict compliance with the statute was not necessary, the majority cites only a brief segment of Dr. Yang's testimony.  Slip op. at 7-8.  When Dr. Yang was asked if respondent was "'capable of rationally weighing the risks and benefits involved in the treatment options available to him,'" the doctor opined "'No.'"  Slip op. at 7.  This is hardly surprising inasmuch as the doctor initiated the petition.  Neither the question posed to the doctor, nor the doctor's response, addresses the ultimate issue of whether the doctor advised respondent in writing (or otherwise) of the side effects, risks, and benefits of the treatment, as well as alternatives.  Nonetheless, the majority concludes that under the circumstances of this case, "the advice to respondent about the involuntary treatment did not have to be in writing.  The language in the statute actually contemplates this situation where respondent cannot comprehend written advice ***."  Slip op. at 9.  This generous interpretation of the statutory language ignores the important liberty interests of respondent and any similarly situated recipients involved in mental health cases.  See 
In re Jill R.
, 336 Ill. App. 3d 956, 963, 785 N.E.2d 46, 52 (2003) (recog­nizing "a compelling need for strict compliance with statutory requirements in mental health cases because commitment is invol­untary and liberty interests are involved"); 
In re Lanter
, 216 Ill. App. 3d 972, 974, 576 N.E.2d 1219, 1220 (1991). 

Under the majority opinion, the same physician who treats the recipient may petition for involuntary treatment, testify to the allegations set forth in the petition, and ignore the mandatory language of the statute by opining that the recipient would not have understood the advice anyway.  This renders the statutory mandate utterly meaningless and should not be countenanced by this court, particularly in instances like the case now before us.  Here, respondent, a former law professor at the University of Illinois, was capable of articulating and expressing his thoughts and anxieties.  His testimony, though rambling, demonstrates he was lucid, and more important, not incapable of comprehending the written advice required by the statute.  Under these facts, I conclude there is no reason to deviate from the statutory requirement to advise respondent of the risks and benefits of the proposed treatment.  

In 
Jill R.
, 336 Ill. App. 3d at 964, 785 N.E.2d at 52, the respondent argued on appeal that the State failed to prove she lacked the capacity to make a reasoned decision about medi­cation, alleging the State failed to present sufficient proof she was informed of the risks and benefits of the medication in writing.  This court disagreed, noting the respondent received a written statement advising her of the benefits and side effects of the medication.  
Jill R.
, 336 Ill. App. 3d at 964, 785 N.E.2d at 52.  Further, the multidisciplinary treatment plan contained a signed statement that the benefits and potential side effects of medications had been discussed with the respondent and provided in writing, along with informing her of the right to refuse medication.  
Jill R.
, 336 Ill. App. 3d at 964, 785 N.E.2d at 52.  Here, the State offered nothing to show respondent was informed either in writing or orally of the risks and benefits of the proposed treatment as required by the Code.

Although I would reverse the trial court, I acknowledge the record as a whole appears to justify the trial court's ultimate determination to allow the administration of the recommended treatment.  The trial court no doubt considered the voluntary testimony of respondent and rendered a judgment it deemed would best serve respondent.  However, bad facts make bad law, and the majority, in my opinion, today establishes ill-advised precedent, which obviates a logical and commonsense statutory requirement that recipients should be advised of the benefits and detriments of the treatment proposed to be administered to them.

As a final matter, I strongly disagree with the majority's 
dicta
 that it will presume the doctor complied with the statute absent evidence to the contrary.  Slip op. at 6.  "That the statutory procedures 
may
 have been followed offers little certainty that respondent's liberty interests have, 
in
 
fact
, been safeguarded."  (Emphasis in original.)  
In re Luttrell
, 261 Ill. App. 3d 221, 229, 633 N.E.2d 74, 80 (1994).  Moreover, such a presumption cannot be inferred from the statutory language, and I find no authority to support the majority's position.