NO. 4-06-0780     Filed 5/11/07

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| In re: DOROTHY J.N., a Person Found | ) | Appeal from |
| Subject to Involuntary Admission of | ) | Circuit Court of |
| Psychotropic Medication, | ) | Sangamon County |
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | No. 06MH561 |
| Petitioner-Appellee, | ) | |
| v. | ) | Honorable |
| DOROTHY J.N., | ) | George H. Ray, |
| Respondent-Appellant. | ) | Judge Presiding. |

_____

JUSTICE McCULLOUGH delivered the opinion of the court:

On September 8, 2006, the trial court entered an order, authorizing the involuntary treatment of respondent, Dorothy J.N. Respondent appeals, arguing (1) the court's decision was against the manifest weight of the evidence and (2) the court's order failed to comply with the Mental Health and Developmental Disabilities Code (Mental Health Code) (405 ILCS 5/1-100 through 6-107 (West 2004)) because it forced the administration of a non-psychotropic medication.  We reverse.

On August 23, 2006, a petition was filed for the authorized involuntary treatment of respondent, alleging she was mentally ill, refused to submit to treatment by psychotropic medication, and lacked the capacity to give informed consent.  An order from the trial court was sought, authorizing the involuntary treatment of respondent in the form of psychotropic medication.  Prolixin was requested as the first choice of medication

to be administered to respondent, with alternative medications being Zyprexa and Celexa. The petition also sought to have Metoprolol, a blood-pressure medication, administered to respondent.

On September 8, 2006, the trial court conducted a hearing on the petition. The State presented the testimony of Dr. Fareed Tabatabai, a psychiatrist. Dr. Tabatabai testified he treated respondent for schizo-affective disorder, a serious mental illness. He stated respondent received treatment for her mental illness for several years, dating back to the 1960s, and had been admitted to mental-health facilities in the past. Respondent was stable for several years while on medication; however, she stopped taking her medication, resulting in her most recent hospitalization.

Dr. Tabatabai stated respondent's symptoms included delusions that caused her not to eat or drink for several weeks, the refusal to take medication, and a general deterioration in her functioning. More specifically, respondent stated John Kennedy told her not to eat or take her medication. Dr. Tabatabai opined respondent's mental illness and symptoms were continuing and if her symptoms were not stabilized she would develop medical complications, including malnutrition, hypertension, and risk of stroke.

Dr. Tabatabai recommended respondent resume taking the

- 2 -

medications she took previously, which included Prolixin Decanoate, Celexa, and Zyprexa. He believed those medications would alleviate her symptoms within a few weeks and would be a benefit. If respondent did not take them, she risked prolonged psychosis and eventual physical deterioration to the point that she would have to be tube fed. Dr. Tabatabai testified that side effects of the medications included sedation, dizziness, and extrapyramidal symptoms. Further, he stated he verbally made respondent aware of the possible side effects of the medications but did not provide her with any written information.

Dr. Tabatabai opined that, given respondent's past medical history and her current condition, the potential benefits of the medications outweighed any potential harm. Based on her psychiatric illness and her symptoms, he did not believe respondent had the capacity to make a reasoned decision about whether to take the medications. Additionally, Dr. Tabatabai testified that respondent really had no other treatment options other than psychotropic medication and, thus, no less-restrictive form of treatment was available.

On cross-examination, Dr. Tabatabai acknowledged respondent was a voluntary patient in a mental-health facility but was refusing treatment. However, on one or two occasions, she did take a dose of Zyprexa and the previous night she agreed to receive a Prolixin Decanoate shot. Dr. Tabatabai testified

- 3 -

that the medications respondent agreed to take counted as treatment, but treatment was extremely sporadic. Further, he stated respondent's capacity to give informed consent fluctuated over time. Finally, Dr. Tabatabai testified that Metoprolol, one of the medications listed in the petition, was not a psychotropic medication.

Following Dr. Tabatabai's testimony, respondent moved for a directed finding, arguing the State failed to prove she lacked capacity and the trial court did not have jurisdiction to order involuntary treatment with a nonpsychotropic medication. The court denied the motion. Respondent then additionally argued that a violation of section 2-102 of the Mental Health Code (405 ILCS 5/2-102 (West 2004)) occurred because she was not informed in writing about the medications. The State acknowledged that written information was not given to respondent but asserted Dr. Tabatabai or the mental-health facility's staff could provide her with it "within the next few minutes." The court then directed staff to provide respondent with written information on the medications. The record is silent as to whether respondent ever received any information in writing.

Next, respondent testified on her own behalf. She stated she did not want to take medicine because "John" did not want her to and because it made her feel bad. Upon inquiry by the State, respondent indicated that the John Kennedy she was

referring to was "John-John." Following respondent's testimony, the trial court authorized involuntary treatment to be administered to her as requested in the petition.

This appeal followed.

Initially, we note, this appeal is moot because the trial court's order was effective for only 90 days and that time period has expired. However, review is appropriate under the public-interest exception to the mootness doctrine, and we will consider the merits of respondent's appeal. In re Elizabeth McN., 367 Ill. App. 3d 786, 789, 855 N.E.2d 588, 590 (2006). In applying the public-interest exception, we are given the opportunity to provide guidance and suggestions with respect to the implementation of section 2-102(a-5) of the Mental Health Code (405 ILCS 5/2-102(a-5) (West 2004)).

On appeal, respondent contends the trial court's judgment is against the manifest weight of the evidence. Specifically, she argues the State failed to show, by clear and convincing evidence, that she lacked the capacity to make a reasoned decision regarding medication because she was not informed in writing about the risks and benefits of the proposed medications.

Generally, a trial court's order permitting the involuntary administration of psychotropic medication will not be reversed unless it is against the manifest weight of the evidence. In re Louis S., 361 Ill. App. 3d 774, 779, 838 N.E.2d

- 5 -

226, 231 (2005). "A judgment will be considered against the manifest weight of the evidence 'only when an opposite conclusion is apparent or when the findings appear to be unreasonable, arbitrary, or not based on evidence.'" Louis S., 361 Ill. App. 3d at 779, 838 N.E.2d at 231, quoting In re John R., 339 Ill. App. 3d 778, 781, 792 N.E.2d 350, 353 (2003).

Pursuant to the Mental Health Code, authorized involuntary treatment may be administered to an individual where the State proves the following by clear and convincing evidence:

"(A) That the recipient has a serious mental illness or developmental disability.

(B) That because of said mental illness or developmental disability, the recipient currently exhibits any one of the following: (i) deterioration of his or her ability to function, as compared to the recipient's ability to function prior to the current onset of symptoms of the mental illness or disability for which treatment is presently sought, (ii) suffering, or (iii) threatening behavior.

(C) That the illness or disability has existed for a period marked by the continuing presence of the symptoms set forth in item

- 6 -

(B) of this subdivision (4) or the repeated episodic occurrence of these symptoms.

(D) That the benefits of the treatment outweigh the harm.

(E) That the recipient lacks the capacity to make a reasoned decision about the treatment.

(F) That other less[-]restrictive services have been explored and found inappropriate.

(G) If the petition seeks authorization for testing and other procedures, that such testing and procedures are essential for the safe and effective administration of the treatment."  405 ILCS 5/2-107.1(a-5)(4)(A) through (a-5)(4)(G) (West 2004).

Section 2-102(a-5) of the Mental Health Code (405 ILCS 5/2-102(a-5) (West 2004)) further provides as follows:

"If the services include the administration of authorized involuntary treatment, the physician or the physician's designee shall advise the recipient, in writing, of the side effects, risks, and benefits of the treatment, as well as alternatives to the proposed

treatment, to the extent such advice is con-

sistent with the recipient's ability to un-

derstand the information communicated."

In Louis S., 361 Ill. App. 3d at 780, 838 N.E.2d at 232, this court determined the State failed to present clear and convincing evidence warranting the authorized involuntary treatment of the respondent because no evidence showed he received the written notification required by section 2-102(a-5). In so holding, we relied on John R., 339 Ill. App. 3d at 783, 792 N.E.2d at 355, wherein the Fifth District held that a respondent is entitled to receive the written notification required by section 2-102(a-5), even where he or she chose not to take the proposed medication after being verbally advised of its benefits and side effects. Louis S., 361 Ill. App. 3d at 780, 838 N.E.2d at 232-33. We noted verbal notification is insufficient to ensure a respondent's due-process rights. Louis S., 361 Ill. App. 3d at 780, 838 N.E.2d at 233.

Additionally, we stated that "the right to written notification is not subject to a harmless-error analysis" and that strict compliance with the procedural safeguards of the Mental Health Code is necessary to protect the liberty interests involved. Louis S., 361 Ill. App. 3d at 780, 838 N.E.2d at 232, citing John R., 339 Ill. App. 3d at 783-84, 792 N.E.2d at 355.

Here, Dr. Tabatabai testified he verbally advised

- 8 -

respondent of the proposed medications' side effects.  He did not provide her with any written notification as required by section 2-102(a-5).  Moreover, not only does section 2-102(a-5) require written notification of the proposed treatment's side effects, it also requires written notification of risks, benefits, and alternatives to the proposed treatment.  Dr. Tabatabai's testimony fails to reflect that he informed respondent of anything other than the proposed medications' side effects.

The State contends that neither <u>Louis S.</u> nor <u>John R.</u> stands for the proposition that written notice may not be provided to the respondent at the time of the hearing.  Although in this instance the State suggested respondent could be provided with written notification at the hearing and the trial court directed that to happen, the record fails to indicate any such action was ever taken.

Additionally, the State argues that section 2-102(a-5)'s requirement that a respondent must be advised in writing concerning proposed treatment is excused when the treating physician believes the respondent lacks the capacity to understand and act upon the information.  The State notes section 2-102(a-5) (405 ILCS 5/2-102(a-5) (West 2004)) states a physician or his designee "shall advise the recipient, in writing, *** to the extent such advice is consistent with the recipient's ability to understand the information communicated."  We find the State's

argument unpersuasive and application of its asserted approach to section 2-102(a-5) would fail to protect the important liberty interests involved.

As noted by the parties, in In re Steven P., 343 Ill. App. 3d 455, 460, 797 N.E.2d 1071, 1076 (2003), this court utilized the State's same argument as a basis for holding that the respondent did not have to be advised in writing concerning the proposed involuntary treatment.  However, the Illinois Supreme Court exercised its supervisory authority and vacated that judgment and directed this court to enter a judgment reversing and vacating the trial court's order granting the petition for authorized involuntary treatment, and remanding for compliance with the statutory requirements of section 2-102(a-5).  In re Steven P., 207 Ill. 2d 604, 801 N.E.2d 947 (2004) (nonprecedential supervisory order on denial of petition for leave to appeal).

Moreover, with respect to this particular case, Dr. Tabatabai testified respondent's capacity to give informed consent fluctuated over time, and he acknowledged that she agreed to take the proposed medication on at least two or three occasions while hospitalized.  His testimony, therefore, indicates respondent had the capacity to understand and act upon the information she received at various points in time.  In Louis S., 361 Ill. App. 3d at 780-81, 838 N.E.2d at 233, citing In re

- 10 -

Richard C., 329 Ill. App. 3d 1090, 1095, 769 N.E.2d 1071, 1076 (2002), we noted that written notification provides a respondent with the opportunity to review the information at a time and in a manner of his choosing. Providing respondent with written information would have allowed her the opportunity to review it at a time when she had the capacity to give informed consent.

In this case, respondent was not advised in writing of the side effects, risks, benefits, and alternatives to the proposed medications. The State failed to establish, by clear and convincing evidence, that respondent lacked the capacity to make a reasoned decision, and the trial court's decision was against the manifest weight of the evidence. Given our holding, it is unnecessary to address respondent's remaining contentions.

For the reasons stated, we reverse the trial court's judgment.

Reversed.

STEIGMANN, P.J., specially concurs.

MYERSCOUGH, J., dissents.

PRESIDING JUSTICE STEIGMANN, specially concurring:

Although I agree with the majority, I write specially to suggest some changes regarding how involuntary-admission proceedings are handled. I do so because (1) we have seen an

- 11 -

increase in the number of these cases on appeal (this court alone rendered 50 such decisions last year) and (2) the same issues tend to arise in case after case.

I. THE NEED FOR A FLOWCHART AND ADDITIONAL TRAINING

First, I suggest that additional training is necessary for everyone involved in these proceedings, including judges, prosecutors, and defense counsel. The Illinois State Bar Association, the State's Attorneys Appellate Prosecutor, the Guardianship and Advocacy Commission, or the State Appellate Defender (or some combination of these groups) should prepare a flowchart for involuntary-admission proceedings to which all involved could refer. The flowchart should emphasize precisely who should be doing what--and when--with regard to the respondents in these proceedings. The preparation of a judicial bench book would also be very helpful, and it should include such a flowchart.

The flowchart (and other professional training) should make clear to prosecutors what they need to elicit from the medical professionals whom they call to testify. Neither the trial court nor this court should be required to infer what these professional witnesses, when testifying in support of a State's involuntary-admission petition, know about the respondent or his background.

Further, defense counsel similarly should be aware of what the State needs to prove so that if the State fails to do

so, a timely, specific objection can be made.  All too often defense counsel fail to object at the hearing to the prosecutor's missteps, leaving this court to wrestle with issues of forfeiture, plain error, and defense counsel ineffectiveness.

Last, of course, the trial court should also be alert to what the State must prove, and courts should rule against the State when it has failed to meet its burden of proof or to otherwise comply with the Code's requirements (assuming, of course, that defense counsel has pointed out any such noncompliance).

## II. A PROCEDURE FOR COMPLYING WITH SECTION 2-102(a-5) OF THE CODE

Second, I suggest that the physician or his designee who comes into contact with the respondent be prepared to meet the requirements of section 2-102(a-5) of the Code (405 ILCS 5/2-102(a-5) (West 2004)) by having prepared, in advance, a written list of the side effects, risks, and benefits of any proposed treatment of the respondent, as well as any alternatives to the proposed treatment.  Then, during the physician's examination of the respondent, the physician could present a copy of the list to the respondent, thereby complying with the statutory requirement that the respondent be advised, in writing, of that information "to the extent such advice is consistent with the recipient's ability to understand the information communicated."  405 ILCS 5/2-102(a-5) (West 2004).  Of course, I suggest that the physi-

cian or the physician's designee further attempt to explain the list's contents. If these steps are followed, whether the respondent actually read the list would not be relevant to finding compliance with section 2-102(a-5) of the Code.

III. THE SUPREME COURT'S SUPERVISORY ORDER IN STEVEN P.

Finally, I agree with the majority's reference to the supreme court's supervisory order in Steven P., 207 Ill. 2d 604, 801 N.E.2d 947. Normally, supreme court supervisory orders are nonprecedential and affect only the case that is the subject of the order. See People v. Phillips, 217 Ill. 2d 270, 280, 840 N.E.2d 1194, 1200 (2005). However, the supervisory order the supreme court entered in Steven P. appears to be rather more than that. In its entirety, that order reads as follows:

"In the exercise of this court's supervisory authority, and in light of the People's factual and legal concessions, the Appellate Court, Fourth District, is directed to vacate its judgment in People v. Steven P., 343 Ill. App. 3d 455[, 797 N.E.2d 1071]. The appellate court is further directed to enter a judgment reversing and vacating the Champaign County circuit court order granting the People's petition for authorization of electroconvulsive therapy and involuntary

- 14 -

administration of medication, and remanding

for compliance with the statutory require-

ments of section 2-102(a-5) of the Mental

Health and Developmental Disabilities Code

(405 ILCS 5/2-102(a-5) (West 2002))." Steven

P. 207 Ill. 2d at 604, 801 N.E.2d at 947.

In my judgment, the above supervisory order sounds like a substantive determination by the supreme court that this court's earlier judgment in Steven P. was wrong, especially given that this court was further directed to vacate the trial court's order that was before us on appeal.

JUSTICE MYERSCOUGH, dissenting:

I respectfully dissent. I would affirm because the trial court did not abuse its discretion in authorizing administration of involuntary treatment. The common-law record includes the signed petition for administration of authorized involuntary treatment and a treatment plan that states respondent had been delivered a written notice of the risks and benefits of the proposed treatment.

> "I have read and understood this [p]etition and affirm that the statements made by me are true to the best of my knowledge. I affirm that I advised the individual, in writing, of the risks and benefits of the proposed treatment."

That notice alone is sufficient compliance with section 2-102(a-5) (405 ILCS 5/2-102(a-5) (West 2004)). See In re Jill R., 336 Ill. App. 3d 956, 964, 785 N.E.2d 47, 52 (2003) (petition and treatment plan indicated written notice given was sufficient compliance).

Unfortunately, in the case sub judice, the signature is illegible, but the individual's address is listed as Vine Street

- 16 -

Clinic. Perhaps this affirmation was signed by Dr. Tabatabai, perhaps not. Regardless, the facts of this case show sufficient compliance with section 2-102(a-5) (405 ILCS 5/2-102(a-5) (West 2004)).

The majority and special concurrence not only disregard the written-notice affirmation but also the court-ordered written notice and the repeated oral notices; and they effectively emasculate the language in the Act that requires written notice only "to the extent such advice is consistent with the recipient's ability to understand the information communicated" (405 ILCS 5/2-102(a-5) (West 2004)). Respondent clearly exhibited an inability to understand the information communicated.

Concededly, the supreme court reversed this court on the written-notice requirement in Steven P., 207 Ill. 2d 604, 801 N.E.2d 947, in a terse supervisory order. However, this appellate court had based its decision on the respondent's forfeiture of the written-notice requirement. The record was silent on any written or oral attempts to notify the respondent of the medication's side effects. Moreover, the supervisory order specifically exercised its supervisory authority "in light of the People's factual and legal concessions," to which this court is not privy. In re Steven P., 207 Ill. 2d at 604, 801 N.E.2d at 947. Moreover, supervisory orders are not precedential. "As the State pointed out, supervisory orders are unpublished, recite no

facts, and provide no rationale upon which the principles of stare decisis may attach." People v. Jackson, 154 Ill. App. 3d 320, 324, 507 N.E.2d 89, 91 (1987).

Our record is not so silent. Not only was the written notice affirmed, but Dr. Tabatabai also testified he and his staff had verbally notified respondent of the potential side effects on numerous occasions.

> "Q. To your knowledge, have they been
>
> given to her in writing?
>
> A. No. I have given these to her ver-
>
> bally on numerous occasions during this
>
> stay."

(Certainly, if the affirmation of written notice was actually signed by Dr. Tabatabai, he contradicted that affirmation here.) Dr. Tabatabai further indicated respondent had a general understanding of what was being discussed but respondent replied "John-John" (Kennedy, Jr.) did not want her to take the medication. (Respondent also interjected John Kennedy, Jr., had her power of attorney for health care and that he was still alive.)

Respondent did indeed on occasion consent to take her medications. But Dr. Tabatabai also testified respondent's capacity fluctuates over time. However, both Dr. Tabatabai and respondent agree respondent lacked the capacity to give informed consent.

- 18 -

"Q. When you had a discussion of the possible side effects, did she show an understanding of what you were discussing?

A. General understanding, yes.

Q. Was she able to provide input concerning the medication?

A. Simply that she prefers not to take any medicine because John doesn't want her to.

Q. In your opinion, Doctor, does the patient have the capacity to make a reasoned decision regarding whether or not to take the medication?

A. No."

And, once again, respondent was advised about the risks and benefits of the medications by staff.

"Q. Did she have capacity yesterday when she gave you informed consent?

A. She didn't give the informed consent. We have a standing order with the staff to approach her with medication, and if she agrees to take the medication with the understanding of the risks of and benefits, that she can take it.

Q.   And that has been a standing order ever since she's been here?

A.   Yes, correct.

Q.   So, it's up to her to make the decision whether to take the medications or not, correct?

A.   Correct.

Q.   And you've allowed that to happen? That's been the status quo since she's been here?

A.   Yes."

Moreover, the trial court here directed staff to give respondent written notice in open court. Perhaps the court should have duly noted on the record compliance with that directive, but the court based its opinion on its observations of respondent and her apparent absence of the capacity to make a reasoned decision, rendering that written notice superfluous.

Further, the majority's and special concurrence's strict compliance with written notice is not mandated by the statute or in Steven P. where, as here, the respondent exhibited an inability to understand the written information.

Finally, I must comment on the majority's and special concurrence's unrealistic view of mental-health commitment proceedings. Having prosecuted mental-health commitment proceed-

ings and presided over them for a period of 12 years, I find the criticism of all the public servants involved in these emotional proceedings unwarranted.  The proceedings are conducted at the mental-health facilities under crowded, hurried conditions for the benefit of the patient.  All involved are concerned with the best interests of a very fragile patient.  The continued strict statutory construction--stricter than that required by statute in fact--is a detriment to both the patient and the medical and legal establishments.

For these reasons, I would affirm the trial court and commend all involved for their public service in the treatment of the mentally ill.