PRESIDING JUSTICE STEIGMANN, specially concurring: Although I agree with the majority, I write specially to suggest some changes regarding how involuntary-admission proceedings are handled. I do so because (1) we have seen an increase in the number of these cases on appeal (this court alone rendered 50 such decisions last year) and (2) the same issues tend to arise in case after case. I. THE NEED FOR A FLOWCHART AND ADDITIONAL TRAINING First, I suggest that additional training is necessary for everyone involved in these proceedings, including judges, prosecutors, and defense counsel. The Illinois State Bar Association, the State’s Attorneys Appellate Prosecutor, the Guardianship and Advocacy Commission, or the State Appellate Defender (or some combination of these groups) should prepare a flowchart for involuntary-admission proceedings to which all involved could refer. The flowchart should emphasize precisely who should be doing what — and when — with regard to the respondents in these proceedings. The preparation of a judicial bench book would also be very helpful, and it should include such a flowchart. The flowchart (and other professional training) should make clear to prosecutors what they need to elicit from the medical professionals whom they call to testify. Neither the trial court nor this court should he required to infer what these professional witnesses, when testifying in support of a State’s involuntary-admission petition, know about the respondent or his background. Further, defense counsel similarly should be aware of what the State needs to prove so that if the State fails to do so, a timely, specific objection can be made. All too often defense counsel fail to object at the hearing to the prosecutor’s missteps, leaving this court to wrestle with issues of forfeiture, plain error, and defense counsel ineffectiveness. Last, of course, the trial court should also be alert to what the State must prove, and courts should rule against the State when it has failed to meet its burden of proof or to otherwise comply with the Code’s requirements (assuming, of course, that defense counsel has pointed out any such noncompliance). II. A PROCEDURE FOR COMPLYING WITH SECTION 2 — 102(a—5) OF THE CODE Second, I suggest that the physician or his designee who comes into contact with the respondent be prepared to meet the requirements of section 2 — 102(a—5) of the Code (405 ILCS 5/2 — 102(a—5) (West 2004)) by having prepared, in advance, a written list of the side effects, risks, and benefits of any proposed treatment of the respondent, as well as any alternatives to the proposed treatment. Then, during the physician’s examination of the respondent, the physician could present a copy of the list to the respondent, thereby complying with the statutory requirement that the respondent be advised, in writing, of that information “to the extent such advice is consistent with the recipient’s ability to understand the information communicated.” 405 ILCS 5/2 — 102(a—5) (West 2004). Of course, I suggest that the physician or the physician’s designee further attempt to explain the list’s contents. If these steps are followed, whether the respondent actually read the list would not be relevant to finding compliance with section 2 — 102(a—5) of the Code. III. THE SUPREME COURT’S SUPERVISORY ORDER IN STEVEN P Finally, I agree with the majority’s reference to the supreme court’s supervisory order in Steven P, 207 Ill. 2d 604, 801 N.E.2d 947. Normally, supreme court supervisory orders are nonprecedential and affect only the case that is the subject of the order. See People v. Phillips, 217 Ill. 2d 270, 280, 840 N.E.2d 1194, 1200 (2005). However, the supervisory order the supreme court entered in Steven P. appears to be rather more than that. In its entirety, that order reads as follows: “In the exercise of this court’s supervisory authority, and in light of the People’s factual and legal concessions, the Appellate Court, Fourth District, is directed to vacate its judgment in People v. Steven P., 343 Ill. App. 3d 455[, 797 N.E.2d 1071], The appellate court is further directed to enter a judgment reversing and vacating the Champaign County circuit court order granting the People’s petition for authorization of electroconvulsive therapy and involuntary administration of medication, and remanding for compliance with the statutory requirements of section 2 — 102(a—5) of the Mental Health and Developmental Disabilities Code (405 ILCS 5/2 — 102(a— 5) (West 2002)).” Steven P., 207 Ill. 2d at 604, 801 N.E.2d at 947. In my judgment, the above supervisory order sounds like a substantive determination by the supreme court that this court’s earlier judgment in Steven E was wrong, especially given that this court was further directed to vacate the trial court’s order that was before us on appeal.